[No. H032781. Sixth Dist. Nov. 21, 2011.]

HOPKINS & CARLEY, Plaintiff and Respondent, v.
TIMOTHY GENS, Defendant and Appellant.

### Counsel

Chapman, Popik & White, J. Michael Matthews and Andrea M. Kendrick for Defendant and Appellant.

Hopkins & Carley, Jeffrey E. Essner and Allonn E. Levy for Plaintiff and Respondent.

### Opinion

**RUSHING, P. J.**—Respondent Hopkins & Carley (H&C) secured an arbitration award against appellant Timothy Gens on a debt for unpaid bills for legal services. Gens moved unsuccessfully to vacate the award, and judgment was duly entered against him. Six months later, he brought a motion to set aside the judgment under Code of Civil Procedure section 473, subdivision (b) (section 473(b)). Although the motion included perfunctory assertions that the judgment was the result of mistake, inadvertence, surprise, or excusable neglect, Gens made no attempt to substantiate them. The real gist of the motion was that he had now discovered a defense to the underlying claim, namely, that H&C had committed ethical violations in providing the legal services on which the arbitration award rested. The trial court denied the motion for relief from the judgment and granted H&C's motion for sanctions. Because Gens offered no coherent explanation for his failure to raise the supposed defense sooner, we affirm both orders as to him. In a related appeal, *Hopkins & Carley v. Gens* (Nov. 21, 2011, H032780) (nonpub. opn.), we affirm the sanctions order as it affects his present attorneys.

## BACKGROUND

Gens is a patent attorney licensed in Illinois, but not in California. In 2002 he engaged H&C on behalf of an entity, L-Tech, which he co-owned with one Gary Ferrell. Gens sought legal assistance in connection with the sale of L-Tech, or its assets, to SEZ Holdings (SEZ), an Austrian entity. This engagement apparently ended when the deal culminated with SEZ hiring Gens and Ferrell and absorbing L-Tech by merger.

In March 2004, Gens again engaged H&C, this time on his own behalf, to advise and represent him in a dispute with Ferrell, and perhaps with SEZ, arising from the arrangement. H&C's engagement was embodied in a written agreement including an undertaking to submit any disputes to mandatory arbitration, subject to the client's right to arbitrate the dispute "under the attorney fee arbitration procedure that exists under California law." (See Bus. & Prof. Code, § 6200 et seq. [Mandatory Fee Arbitration Act] (MFAA).)

Although the precise nature of the dispute between Gens and Ferrell is not apparent, Gens apparently claimed that Ferrell had made some sort of "secret deal," apparently with SEZ, in breach of some duty to Gens. In any event, H&C brought an action against Ferrell on behalf of Gens in San Mateo Superior Court. Ferrell cross-complained alleging, among other things, that Gens had engaged in the unauthorized practice of law.

By May 2006, H&C's outstanding bills in the Ferrell matter had risen to some $415,000, which Gens refused to pay, claiming that H&C had exceeded a supposed budget without his authorization. According to proofs of service in the present record, H&C sent Gens a letter on July 20, 2006, enclosing a notice of his rights under the MFAA, as required by Business and Professions Code section 6201, subdivision (a). On September 6, 2006, H&C formally demanded arbitration before the American Arbitration Association (AAA) as provided in the professional services agreement. Gens did not respond to this demand or to the many ensuing notices and communications directed to him by H&C and the case administrator over the next four months. In his absence, an arbitrator was appointed and a hearing on the merits was scheduled for January 16, 2007.

On January 13, 2007, Gens wrote to the AAA demanding that it "cease and desist any proceedings . . . immediately." He denied that the matter had been "properly served and noticed," stating, "If any such service and notice has been filed with the Association, it is false and will be proven so at the appropriate opportunity." Apparently alluding to his rights under the MFAA, he wrote that a "Request for Arbitration of a Fee Dispute has been prepared and will be filed with the California State Bar at 9 am on Tuesday, January

16, 2007"—one-half hour before the time set for the AAA hearing.[1] Gens also asserted in the letter that he would be "meeting with counsel" on the morning of the hearing "to specifically address this Association case."

The arbitrator went forward with the hearing on January 16. Gens did not attend. On January 23, 2007, the arbitrator entered an award in H&C's favor in the amount of $474,061.56, plus $6,950 in fees and expenses.

Acting in propria persona, Gens filed a petition to vacate the arbitration award. H&C countered with a petition to confirm the award and enter judgment. In support of his petition, and opposition to H&C's, Gens contended that he had not received proper notice, or perhaps any notice, of relevant matters, particularly the required notice of his rights under the MFAA. He implied that mail delivered to his Palo Alto residence might not have reached him, suggesting among other things that he had "sold" that home after moving to Wisconsin.[2] However, in January he had made similar claims in an attempt to prevent H&C from obtaining a right to attach order and writ of attachment. The trial court then concluded, after reviewing voluminous evidence of attempts to serve Gens with relevant documents, that he "did have proper notice." The court further observed, "I can't recall ever seeing more evidence indicating an attempt to avoid service of process by an individual than what I have seen in reviewing this file. It appears to me that you were ducking process for a long period of time." The court granted the application and issued the requested right to attach order and writ of attachment. Gens appealed, and this court ultimately affirmed, finding ample evidentiary basis for the trial court's findings. (*Hopkins & Carley v. Gens* (Mar. 26, 2009, H031383) [nonpub. opn.] (*Gens I*).)

Meanwhile, on June 5, 2007, the trial court granted H&C's petition to confirm the award, and entered a judgment for H&C. On June 19, the court denied the motion to vacate the award. Gens took two successive appeals "from the 'Judgment' entered June 5, 2007 and the Order entered June 19, 2007 denying Timothy Gens' 'Petition to Vacate.' " On July 17, 2007, we dismissed the first appeal, *Hopkins & Carley v. Gens* (H031731) (*Gens II*), for default in the payment of fees. Gens filed the second appeal, *Hopkins & Carley v. Gens* (Feb. 6, 2008, H031934) (app. dism.) (*Gens III*), on August 17. H&C moved to dismiss it, in part, on the ground that it was filed more than 60 days after H&C had mailed notice of entry of judgment to Gens. Gens opposed the motion, stating that the appeal was not taken from the

---

[1] The record contains no indication that such a request was ever submitted.

[2] Gens declared unqualifiedly that he had "sold" his Palo Alto house in November of 2006. In fact, according to a petition later filed by H&C to set the transaction aside, he had conveyed the house to his wife by an "Interspousal Grant Deed," an attached copy of which contained the recital, "THERE IS NO CONSIDERATION FOR THIS TRANSFER."

judgment but from the order of June 5, 2007, denying his motion to vacate the arbitration award. He also represented to this court, in the opposition and by separate letter, that he and H&C were "negotiating a potential settlement."

As a result of these maneuvers the appeal in *Gens III* was still pending on December 4, 2007, when Gens filed a motion in the trial court "for relief from judgment, pursuant to Code of Civil Procedure § 473" (the section 473 motion). Now represented by counsel—J. Michael Matthews of Chapman, Popik & White (CP&W)—Gens asserted in the notice of motion that "the judgment was entered against Mr. Gens through mistake, inadvertence, or excusable neglect." The supporting memorandum suggested that Gens had only belatedly discovered certain defenses to H&C's claim for fees, including that recovery was barred by H&C's having represented conflicting interests, without the clients' informed consent, by entering into the 2004 engagement. Gens also asserted that the judgment was "based on an impermissible ex parte default award," and reprised his previous claim that H&C had failed to provide the notice required by the MFAA.

H&C filed opposition to the motion for relief from the judgment and moved separately for sanctions under Code of Civil Procedure section 128.7 (section 128.7). It asserted that the relief sought by Gens was procedurally barred by (1) the pending appeal; (2) the lapse of more than six months from the claimed "mistake, inadvertence, or excusable neglect" on which the motion rested; and (3) the lapse of too much time from the arbitration award, which Gens sought in effect to vacate. H&C further argued that Gens had failed to identify any substantive basis for relief. It asserted that Gens had made a "strategic decision" and "tactical choice" by absenting himself from the arbitration proceedings and in choosing his arguments against confirmation of the arbitration award, and that relief was not available in such circumstances. It also contested the facts on which Gens based his claim for relief.

After hearing argument, the trial court announced that it was denying the section 473 motion "for two reasons. [¶] Number one, I do believe [the motion] is procedurally barred. [¶] Assuming I'm incorrect with that conclusion, even if we reach the factual merits, I believe there is no basis for that." It also granted the motion for sanctions, stating, "I do intend to impose sanctions against Mr. Gens in this matter, however not in the amount being requested. [¶] Sanctions in the amount of 9,000 dollars will be ordered." The court thereafter signed formal orders denying the motion for relief and granting the motion for sanctions as to both Gens and his attorneys.

On March 28, 2008, Gens appealed from the order denying relief from the judgment and the order awarding sanctions. On the same date, Matthews and CP&W filed a notice of appeal from the sanction order.[3]

## DISCUSSION

### I. Denial of Relief from Judgment

#### A. Introduction

H&C asserts that the relief sought by Gens was barred on several procedural grounds, including that the pendency of *Gens III* in this court deprived the trial court of jurisdiction to grant relief from the judgment. It is certainly true that an appeal from a judgment ordinarily deprives the trial court of jurisdiction. (*Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 666 [73 Cal.Rptr.2d 242].) However there are various exceptions to this rule, the scope and application of which are sufficiently uncertain that we find it expedient to go directly to the substantive heart of the motion, i.e., the existence of grounds for relief under the statute.[4]

---

[3] An order denying relief under section 473(b) is appealable (*Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1413–1414 [71 Cal.Rptr.3d 65]), as is an order assessing sanctions in the amount awarded here (Code Civ. Proc., § 904.1, subd. (a)(12)).

[4] A sizable body of precedent holds that an appeal from a *nonappealable order* will not divest the trial court of jurisdiction. (See *Pazderka v. Caballeros Dimas Alang, Inc., supra*, 62 Cal.App.4th at pp. 666–667 [because judgment entered under Code Civ. Proc., § 998 was not appealable, purported appeal therefrom did not divest trial court of power to rule on motion for relief from judgment]; *Davis v. Taliaferro* (1963) 218 Cal.App.2d 120, 124 [32 Cal.Rptr. 208] [same, order vacating entry of default; "The trial court is not divested of jurisdiction by an appeal from a nonappealable order."]; *Estate of Brady* (1950) 95 Cal.App.2d 511, 513 [213 P.2d 125] [throughout pendency of earlier "abortive" appeal from nonappealable order, trial court "had full jurisdiction of the cause and could have at any time made the findings and entered judgment"]; *Maxwell v. Superior Court* (1934) 1 Cal.2d 294, 297 [34 P.2d 475] [appeal from interlocutory order "was ineffectual and did not divest the respondent court of jurisdiction" to proceed to judgment].) This rule appears to have been applicable here insofar as the appeal was taken from the order denying the motion to vacate the arbitration award, which order was not separately appealable. (Code Civ. Proc., § 1294; *Mid-Wilshire Associates v. O'Leary* (1992) 7 Cal.App.4th 1450, 1454 [9 Cal.Rptr.2d 862]; *National Marble Co. v. Bricklayers & Allied Craftsmen* (1986) 184 Cal.App.3d 1057, 1060, fn. 1 [229 Cal.Rptr. 653]; see *Law Offices of David S. Karton v. Segreto* (2009) 176 Cal.App.4th 1, 9 [97 Cal.Rptr.3d 329] [explaining statutory scheme].) The untimely appeal from the *judgment*, however, is more troublesome. At least one case has applied the above rule to a late notice of appeal, holding that it failed to transfer jurisdiction to the reviewing court, and left it in the trial court. (*In re Kandarian* (1921) 187 Cal. 479, 480 [202 P. 647].) However the notice there was filed more than eight months after entry of judgment, such that the appeal was incontestably time-barred. We question whether the same rule can or should apply where, as here, the lateness of the appeal depends on facts that are at least theoretically disputable, such as recitals in a declaration of service. Arguably the appellate court acquires exclusive jurisdiction in such a case to determine whether the appeal is in fact untimely, and until it has made that determination the trial court is

■ Section 473(b) provides in pertinent part, "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief . . . shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." The statute's "broad remedial provisions" (*Carrasco v. Craft* (1985) 164 Cal.App.3d 796, 803 [210 Cal.Rptr. 599]) are to be "liberally applied to carry out the policy of permitting trial on the merits" (8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, § 144, p. 736). The party seeking relief, however, bears the burden of proof in establishing a right to relief. (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1205 [99 Cal.Rptr.3d 642].) The burden is a " ' "double" ' " one: the moving party " ' "must show a satisfactory excuse for his default, and he must show diligence in making the motion after discovery of the default." ' " (*Huh v. Wang, supra,* 158 Cal.App.4th 1406, 1420.) Whether the moving party has successfully carried this burden is a question entrusted in the first instance to the discretion of the trial court; its ruling will not be disturbed in the absence of a demonstrated abuse of that discretion. (*Rodriguez v. Henard* (2009) 174 Cal.App.4th 529, 534–535 [94 Cal.Rptr.3d 313]; *Shapiro v. Clark* (2008) 164 Cal.App.4th 1128, 1139–1140 [80 Cal.Rptr.3d 398].)

For a number of reasons and in a number of respects, Gens has failed to carry this burden. Most fundamentally, he has failed to identify a colorable basis for relief under the statute. He seems to suggest that the entry of the challenged judgment is attributable to mistakes of fact and law, as well as to "fraud" by H&C. But he never clearly identifies any concrete actuating mistake or misrepresentation. It was his burden to demonstrate "that due to *some mistake,* either of fact or of law, of himself or of his counsel, or through *some inadvertence,* surprise or neglect which may properly be considered excusable, the judgment or order from which he seeks relief should be reversed." (*Kendall v. Barker* (1988) 197 Cal.App.3d 619, 623–624 [243 Cal.Rptr. 42], italics added.) It is simply not enough to assert a general state of misapprehension or ignorance on some subject bearing on a possible defense. He must specify the actual cause of his failure to present the defense the first time around, and explain why that failure should be excused. He has made no real attempt to do this. The trial court therefore quite properly denied relief.

without power in the matter. The real danger with such situations, of course, is that litigants may be placed in a procedural limbo while the clock ticks against some forms of relief only the trial court can grant. The most prudent course in such a case might be to invoke the power of the trial court by moving for relief—thereby preserving whatever remedies may reside in that court's power—while asking it to abate further action pending a determination of appellate jurisdiction.

## B. *Mistake*

In his original declaration supporting the section 473 motion, Gens averred that in 2004, when he engaged H&C for the second time, he "did not know or realize that Hopkins & Carley owed duties to SEZ on account of its handling the L-Tech/SEZ merger."[5] Beyond that the declaration makes no direct assertion of mistake or ignorance on any relevant point. In his declaration in reply to H&C's opposition, Gens averred, "When as a *pro. per.* party I resisted Hopkins & Carley's petition to reduce its default arbitration award to judgment, *I did not understand that the firm had had conflicts of interests* when it signed the retainer agreement and represented me, and I *did not know that those conflicts barred it from recovering fees* from me. If I had known, I would have raised the conflicts as a defense to Hopkins & Carley's petition. *I mistakenly did not raise this defense* to the petition. I authorized this motion *as soon as I was able to retain counsel and discovered the import of the conflicts*, and then moved promptly to have the motion filed." (Italics added.)

These averments establish, if somewhat less falsifiably than might be desired, that Gens was ignorant of certain vaguely described matters.[6] But they fail conspicuously to set out any of the details that would most obviously bear on the *excusability* of the claimed ignorance: When was counsel retained? Why was Gens not "able" to engage counsel sooner? What exactly was "discovered"? How? When? By whom? And most critically, again—why not sooner? These omissions are fatal to the motion because without at least some such information it is impossible to determine what the supposed mistake *was* and whether it furnished a legally sufficient excuse for the failure to assert the conflict-of-interest defense in a timely manner. (See *Kendall v. Barker, supra*, 197 Cal.App.3d 619, 624, quoting *Hewins v. Walbeck* (1943) 60 Cal.App.2d 603, 610 [141 P.2d 241] [movant's assumption of burden to show entitlement to relief " 'necessarily requires the production of evidence' "].)

Nor do any of the circumstances revealed by the record suggest any excuse for the belated discovery. Certainly it does not appear that Gens lacked knowledge of any relevant *facts*. The conflict-of-interest defense apparently rested on the propositions that (1) H&C's actions in the merger transaction

---

[5] This would be an uncharacteristically straightforward assertion of fact if not for the injection of the phrase "or realize," which renders it perplexing.

[6] To constitute affirmative evidence, an averment in an affidavit must be *falsifiable*. Our observation in *Gens I* about certain statements there by Gens applies to nearly everything he has submitted in this matter: "Even if Gens had made these statements under oath, they were too vague and equivocal to constitute reliable evidence. (See *Hoffman v. City of Palm Springs* (1959) 169 Cal.App.2d 645, 649 [337 P.2d 521] ['The chief test of the sufficiency of an affidavit is whether it is so clear and certain that an indictment for perjury may be sustained on it if false.'].)" (*Gens I, supra*, H031383.)

gave rise to an attorney-client relationship, or its equivalent, between H&C and SEZ, and perhaps between H&C and Ferrell; (2) this placed H&C in a position where any action against SEZ or Ferrell would entail the representation of conflicting interests; (3) H&C failed to obtain informed written consent to such representation from Gens; (4) H&C thereby violated its ethical duties by proceeding; and (5) this violation furnished a defense to H&C's claim for compensation for the services rendered to Gens.

None of these propositions appears to rest on any facts that Gens did not know long before entry of judgment. Certainly he has identified no such facts. On the contrary it appears that he knew as much about relevant matters as anyone. In his supporting declaration below he asserted the existence of an ethical obligation (proposition 1, *ante*) based entirely on H&C's "handling [of] the L-Tech/SEZ merger." In his brief here he asserts that H&C had ethical duties to "SEZ as the successor to L-Tech." So far as this record shows, Gens knew all about the merger, and SEZ's succession to L-Tech's rights and privileges, when those things occurred. He declared in 2004 that it was he who, on behalf of L-Tech, engaged H&C in 2002. He went on to state that he "was the only L-Tech representative to communicate with H&C attorneys" in connection with the transaction. The inference thus seems inescapable that long before judgment was entered in this matter, Gens knew all the facts from which the alleged conflict of interest arose.

The only other obvious factual component of the defense was H&C's supposed failure to secure the informed consent of the affected clients, or at least of Gens. But again, Gens must have known what H&C told or did not tell him and what consent he did or did not give. The record contains no suggestion to the contrary. In his declaration he averred that he was not advised of any conflict and did not consent to it. But so far as anything here suggests, he could have so attested at any time.[7]

 The claim of mistake must therefore necessarily rest on the asserted failure by Gens to "realize" that the facts he already knew supported a claim that H&C had committed an ethical violation barring it from recovering for its services. This of course would be ignorance of law, not of fact. An "honest mistake of law" can provide "a valid ground for relief," at least "where a problem is complex and debatable," but relief may be properly denied where

---

[7] H&C asserted below that the claim of an undisclosed conflict of interest was false in fact, and offered to rebut it by providing documents, which it said were privileged, for the court's in camera inspection. In reply Gens expressly waived any claim of privilege. Counsel offered the documents for inspection at the hearing, but the court did not pursue the suggestion. Conceivably the documents contained confidential communications with persons other than Gens, in which case we doubt that H&C was free to disclose them to the court, in or out of chambers. In any event the court could not properly act on the basis of materials that were not made part of the record.

the record shows only "ignorance of the law coupled with negligence in ascertaining it." (*A & S Air Conditioning v. John J. Moore Co.* (1960) 184 Cal.App.2d 617, 620 [7 Cal.Rptr. 592].) In considering whether a mistake of law furnishes grounds for relief, " ' "the determining factors are the reasonableness of the misconception and the justifiability of lack of determination of the correct law." ' " (*Torbitt v. State of California* (1984) 161 Cal.App.3d 860, 866 [208 Cal.Rptr. 1], quoting *Tammen v. County of San Diego* (1967) 66 Cal.2d 468, 476 [58 Cal.Rptr. 249, 426 P.2d 753].) Here Gens identifies no affirmative "misconception," so the sufficiency of his showing depends on whether he established a sufficient justification for his failure to "determin[e] . . . the correct law," i.e., to discover the legal theory he now contends would have prevented the entry of judgment against him. He provided no basis to answer this question in the affirmative.

■ As reflected in this record, the chief actuating causes of the failure to present the conflict-of-interest defense sooner were (1) the decision by Gens to act as his own attorney, and (2) his failure, in that capacity, to adequately review the applicable law and analyze its application to facts already in his possession. Gens himself repeatedly alludes to his erstwhile *"in pro. per."* status, and asserts that the defense was discovered by Attorney Matthews upon being retained. But the law casts upon every civil defendant a duty " 'to take timely and adequate steps to retain counsel or to act in his own person to avoid an undesirable judgment.' " (*Hearn v. Howard, supra,* 177 Cal.App.4th 1193, 1206, quoting *Elms v. Elms* (1946) 72 Cal.App.2d 508, 513 [164 P.2d 936].) Gens makes no attempt to explain his belated retention of counsel. **(4)** Before a defendant can secure relief under section 473(b) based on a failure to adequately defend himself, he must show that " 'in arranging for his defense . . . he has exercised such reasonable diligence as a man of ordinary prudence usually bestows upon important business . . . .' " (*Hearn v. Howard, supra,* at p. 1206, quoting *Elms v. Elms, supra,* at p. 513.) The law does not entitle a party to proceed experimentally without counsel and then turn back the clock if the experiment yields an adverse result. One who voluntarily represents himself "is not, for that reason, entitled to any more (or less) consideration than a lawyer. Thus, any alleged ignorance of legal matters or failure to properly represent himself can hardly constitute 'mistake, inadvertence, surprise or excusable neglect' as those terms are used in section 473." (*Goodson v. The Bogerts, Inc.* (1967) 252 Cal.App.2d 32, 40 [60 Cal.Rptr. 146].) Rather, "when a litigant accepts the risks of proceeding without counsel, he or she is stuck with the outcome, and has no greater opportunity to cast off an unfavorable judgment than he or she would if represented by counsel." (*Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262, 1267 [56 Cal.Rptr.3d 437].) Here as in the case just cited, when Gens claims to have made a mistake of law, "what he really means is not that he made a mistake of law when he attempted to put on his case at trial, but that he made

a mistake in judgment when he chose to act as his own attorney." (*Ibid.*) The "naïveté" of lay litigants in "rely[ing] on themselves to protect their substantial legal interests" does not afford a ground for relief from adverse results. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 979 [35 Cal.Rptr.2d 669, 884 P.2d 126].)

■ Given that Gens is a lawyer, albeit one licensed only in another jurisdiction, his failure to discover the conflict-of-interest defense when acting as his own lawyer is a recognized species of *inexcusable* neglect. ■ " 'Conduct falling below the professional standard of care, such as failure to timely object *or to properly advance an argument*, is not . . . excusable.' " (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258 [121 Cal.Rptr.2d 187, 47 P.3d 1056], italics added, quoting *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 682 [68 Cal.Rptr.2d 228].) The duty of competence imposed on attorneys includes the obligation to know " 'those plain and elementary principles of law which are commonly known by well informed attorneys,' " and also " 'to discover those additional rules of law which, although not commonly known, may readily be found by standard research techniques.' " (*Osornio v. Weingarten* (2004) 124 Cal.App.4th 304, 333 [21 Cal.Rptr.3d 246], quoting *Smith v. Lewis* (1975) 13 Cal.3d 349, 358–359 [118 Cal.Rptr. 621, 530 P.2d 589], disapproved on another ground in *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 14 [126 Cal.Rptr. 633, 544 P.2d 561].) Where the law is doubtful or uncertain, an attorney is obliged " 'to undertake reasonable research in an effort to ascertain relevant legal principles and to make an informed decision as to a course of conduct based upon an intelligent assessment of the problem.' " (*Osornio,* at p. 333, quoting *Smith,* at p. 359.)

■ A review of relevant, readily available secondary authorities would have promptly yielded the knowledge that an attorney's ethical violations may furnish a defense to a claim by him for compensation. (See 1 Witkin, Cal. Procedure (5th ed. 2008) Attorneys, § 211, p. 281, citing *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.* (1997) 52 Cal.App.4th 1, 14 [60 Cal.Rptr.2d 207] ["The general rule is that an attorney who violates his or her ethical duties to a client is not entitled to any fee."]; Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2010) ¶ 5:1026, p. 5-123 (rev. # 1, 2010) ["Courts have denied fees entirely where the attorney violated conflict of interest rules . . . ."].) Armed with that knowledge he could easily have determined from these or other sources whether such a defense could be predicated on the facts that, as we have noted, were already well known to him or might readily have been ascertained. Instead, he "did not make a legitimate factual investigation nor engage in any legal research to determine whether or not such [a defense] might be feasible." (*Torbitt v. State of California, supra,* 161 Cal.App.3d 860, 865.)

■ Gens offers no excuse for this failure and we doubt that one could be heard if presented. As one trained in the law, he must be charged with knowledge both of the limits of his own competence as an attorney and of the means to enlarge his understanding. His inexcusable negligence as an attorney must be imputed to him as a client. (See *Torbitt v. State of California, supra,* 161 Cal.App.3d at p. 867; *Huh v. Wang, supra,* 158 Cal.App.4th 1406, 1419 ["A party seeking discretionary relief on the ground of attorney error must demonstrate that the error was excusable, since the attorney's negligence is imputed to the client."].)

■ Nothing in this record suggests that the denial of relief so offended the policies underlying section 473(b) as to constitute even arguable error. As we and many other courts have noted, reviewing courts tend to favor orders granting relief under section 473(b) in order to effectuate a policy favoring trial on the merits over dispositions by default. (See *Shapiro v. Clark, supra,* 164 Cal.App.4th 1128, 1140; 8 Witkin, Cal. Procedure, *supra,* Attack on Judgment in Trial Court, § 188, pp. 787–788, and cases there cited.) This policy, however, cannot invariably prevail over competing policies, including those that "favor getting cases to trial on time, avoiding unnecessary and prejudicial delay, and preventing litigants from playing fast and loose with the pertinent legal rules and procedures." (*Gardner v. Superior Court* (1986) 182 Cal.App.3d 335, 339 [227 Cal.Rptr. 78].) While " 'courts are liberal in relieving parties of defaults caused by inadvertence or excusable neglect,' " they " 'do not act as guardians for incompetent parties or parties who are grossly careless as to their own affairs. There must be rules and regulations by which rights are determined and under which judgments become final.' " (*Daher v. American Pipe & Constr. Co.* (1968) 257 Cal.App.2d 816, 820–821 [65 Cal.Rptr. 259], quoting *Gillingham v. Lawrence* (1909) 11 Cal.App. 231, 233–234 [104 P. 584].) This is a rule of necessity, for " '[w]hen inexcusable neglect is condoned even tacitly by the courts, they themselves unwittingly become instruments undermining the orderly process of the law.' " (*Don v. Cruz* (1982) 131 Cal.App.3d 695, 701 [182 Cal.Rptr. 581], quoting *Transit Ads, Inc. v. Tanner Motor Livery, Ltd.* (1969) 270 Cal.App.2d 275, 282 [75 Cal.Rptr. 848].) And " '[a] doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation.' " (*Burnete v. La Casa Dana Apartments, supra,* 148 Cal.App.4th at p. 1270.)

All of these countervailing policies are implicated here, where Gens had every opportunity to raise his newly discovered defense at an earlier time but simply neglected to do so. For that same reason, the judgment he sought to set aside was in no proper sense obtained by "default," and thus does not invoke the core policy favoring relief. The underlying *arbitration award* might be viewed as the product of a "default" in the broad sense that Gens

was not there, having elected to stand on an improbable and unsubstantiated suggestion that he lacked proper notice. But by the time the judgment was entered there had been an intervening proceeding on H&C's motion to confirm the award. In that proceeding Gens had every opportunity to prevent the ripening of the arbitration award into a judgment; indeed he sought to do so, but failed to raise a colorable defense. This was his trial on the merits. Insofar as he might have achieved a different result by asserting additional legal theories—a point we do not consider—he is the victim not of a default, but of his own inexcusable neglect in failing to adequately investigate and research available defenses. The policy favoring relief under section 473 has greatly reduced valence where, as here, the party seeking it has enjoyed every opportunity to present a defense, has in fact appeared and done so, but has simply failed, for unexplained reasons, to present the best defense he had.

### C. *Fraud*

 Gens also asserts that he was entitled to relief from the judgment on grounds of fraud. He made no similar assertion below and offers no exception to the general bar against raising points in derogation of a judgment for the first time on appeal. In any event the claim of "fraud" as a ground for relief from the judgment is meritless *on its face*. To warrant such relief, the fraud must have *brought about the entry of the judgment*, e.g., by lulling the movant into sacrificing his opportunity to present a defense. (See *Daher v. American Pipe & Constr. Co., supra,* 257 Cal.App.2d at p. 820; see 8 Witkin, Cal. Procedure, *supra,* Attack on Judgment in Trial Court, § 225, p. 832 ["essential characteristic" of "extrinsic fraud" justifying relief in equity "is that it has the effect of preventing a fair adversary hearing, the aggrieved party being deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting that party's claim or defense"]; 8 Witkin, *supra,* § 151, p. 745 ["intrinsic" fraud, which will also permit relief under § 473(b), is fraud having same effect, but "occurring in the course of an adversary hearing"].) Here the only fraud asserted by Gens is H&C's "failure to meet its disclosure obligations under the Code of Professional Conduct." Such antecedent conduct, which does not prevent the complaining party from participating in a "fair adversary hearing," cannot justify relief from a judgment.

### D. *Diligence*

As previously noted, Gens bore a twofold burden in the trial court: to establish not only an excuse for not seasonably asserting his conflict-of-interest defense but also reasonable diligence in seeking relief. (*Huh v. Wang, supra,* 158 Cal.App.4th 1406, 1420.) Even if he had carried his burden on the first point—which he certainly did not—the record provides no concrete basis

to find in his favor on the second. It suggests instead that in seeking relief from the judgment he "played out the string," to borrow a popular phrase, to the last possible moment. The order confirming the award was signed and filed on June 5, 2007, and notice thereof was mailed to Gens on the next day. The motion for relief from the judgment was signed on December 4, 2007. This was the very end of the six months within which relief may be sought under section 473(b).

In *Huh v. Wang, supra*, 158 Cal.App.4th 1406, 1422, another panel of this court held that a moving party's failure to explain a delay of three months in seeking relief from a judgment resulted in "the absolute failure of proof" and left "no basis for granting relief." The showing by Gens here, if not an absolute failure of proof, certainly fell woefully short of compelling the trial court to grant relief. The only information he provided on this subject—and that only obliquely—was that Attorney Matthews happened to discover the supposed conflict of interest near the end of the six months. No attempt was made to justify the mutual failure of Gens and Matthews to discover the relevant facts and law sooner.[8]

The order denying relief from the judgment must be affirmed.

## II. *Sanctions*

### A. *Background*

After Attorney Matthews filed the motion for relief from the judgment on behalf of Gens, Attorney Essner sent Matthews a letter warning that if the motion were not withdrawn, H&C would move for sanctions under section 128.7. When Matthews declined to withdraw the motion for relief, H&C filed the motion for sanctions. The court ultimately entered a formal order assessing $9,000 in sanctions against Gens and his attorneys.

### B. *Sufficiency of Specification of Offending Conduct*

Gens contends the trial court erred by failing to "describe the conduct determined to constitute a violation of this section and explain the basis for the sanction imposed." (§ 128.7, subd. (e).) He correctly observes that the

---

[8] Although Matthews was formally substituted into this action on December 4, 2007, the record includes a letter of April 16, 2007, in which Gens "authorized" H&C "to release all files to Mike Matthews and the Chapman, Popik and White firm." In the absence of any showing to the contrary we would expect that shortly after this date, Matthews joined Gens in having possession of the basic facts on which any conflict-of-interest defense would necessarily be based. This of course was nearly eight months before Gens, through Matthews, moved for relief from the judgment.

court gave no distinct explanation for the sanctions *at the hearing*. But in its formal order, the court found that Gens and his attorneys "filed and then subsequently refused to withdraw a Motion For Relief From Judgment that was filed for an improper purpose and that said motion contained legal contentions that were not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Gens dismisses this instrument as a "form order," "prepared by Hopkins & Carley and supplied earlier," which the court merely "signed." No authority is offered for the implicit premise that such an order, when adopted by the court and made its own, cannot satisfy the statutory mandate. To the extent such an argument is made, we reject it.

Gens further assails the order as "simply recit[ing] boilerplate from the statute, not specific wrongful acts." But while the order indeed uses language from the statute, it also describes a specific wrongful act: the filing of a motion without legal support and for an improper purpose. Once again Gens fails to marshal any authority or even offer a syllogistic argument in support of the implication that the order was deficient. Nor does he suggest what more the court might have said unless it was to elaborate on the description of the offending conduct by adding circumstantial details that are matters of record. The court could have specified the improper purpose by which it found the motion to have been actuated, but that seems obvious: To impede, delay, obstruct, and harass H&C in the pursuit of its claim against Gens.

Gens further faults the order for failing to "explain why the amount had been selected." He writes, "[T]he record is devoid of any explanation of how the trial court arrived at $9,000 as an appropriate amount to award." This assertion again turns a blind eye to the order itself, which states, "[T]he sanction imposed hereby is *sufficient to deter repetition* of the violation of Code of Civil Procedure § 128.7 identified herein, or comparable conduct by others similarly situated in that the amount of 9000 imposed as a sanction is *based upon the time expended* by Hopkins & Carley in defending the motion and bringing the motion for sanctions. Said time, hourly rates, and total amount of sanctions are *reasonable* and were incurred as a direct result of the violation of Code of Civil Procedure § 128.7." (Italics added, underlined material handwritten in original.) This indicates that the sum was selected in part for its deterrent value and in part as a reflection of the cost reasonably incurred in defending against the meritless motion and bringing the motion for sanctions. Again, Gens has failed to provide any basis for holding this language insufficient.

 Gens cites *Lucas v. Santa Maria Public Airport Dist.* (1995) 39 Cal.App.4th 1017, 1028–1029 [46 Cal.Rptr.2d 177] (*Lucas*), in proximity to assertions that the sanction order was defective. The order in that case was

based on Code of Civil Procedure section 128.5 (section 128.5), not section 128.7. As observed in a case cited elsewhere by Gens, section 128.7 "imposes a lower threshold for sanctions than is required under . . . section 128.5," in that the former "requires only that the conduct be 'objectively unreasonable,' " while the latter "also requires 'a showing of subjective bad faith.' " (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167 [128 Cal.Rptr.2d 65], quoting *In re Marriage of Reese & Guy* (1999) 73 Cal.App.4th 1214, 1221 [87 Cal.Rptr.2d 339].) Further, as observed by the court in *Lucas, supra,* 39 Cal.App.4th at page 1028, section 128.5 requires that the court " 'recite in detail the conduct or circumstances justifying the order.' " (§ 128.5, subd. (c).) On its face at least, that language is not—as Gens asserts— "substantially identical" to the requirement in section 128.7, subdivision (e), that the court "describe the conduct determined to constitute a violation of this section and explain the basis for the sanction imposed." In any event, the order in *Lucas* was reversed both for the trial court's failure to include "a detailed, written explanation of the conduct or circumstances" justifying the sanctions and for its failure to find *fault* as required under that statute. (*Lucas,* at p. 1028.) Further, the opinion did not describe the order there other than to say that "the trial court ordered Lucas to pay sanctions of $500." (*Id.* at p. 1022.) This makes it impossible to determine the extent to which the order resembled, or differed from, the order challenged here.

### C. *Punishment for Attorney's Conduct*

Gens also suggests, with characteristic vagueness, that the sanction order offended the statutory prohibition against sanctioning a client "for a violation of paragraph (2) of subdivision (b)," i.e., for an assertion of "claims, defenses, [or] other legal contentions" that are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." (§ 128.7, subds. (d)(1), (b)(2).) This exemption appears to rest on the premise that a client should not be penalized for the assertion of an argument whose legal merits he cannot be expected to judge. That premise of course may not apply when the client is himself an attorney—though we hasten to add that attorneys are entitled, along with other citizens, to delegate legal judgments about their affairs to counsel engaged for that purpose. In any event, we think it obvious that the order here did not rest primarily on the lack of legal merit but on the absence of factual support for the section 473 motion and, most importantly, the manifestly improper purpose for which it was brought. Accordingly the award against Gens did not offend the cited prohibition.

### D. *Abuse of Discretion*

Gens asserts that sanctions were not warranted under section 128.7 because his motion for relief from the judgment was neither frivolous nor

interposed for an improper purpose. No real attempt is made to substantiate this assertion, let alone to show error in the trial court's contrary determination. He cites *Guillemin v. Stein, supra,* 104 Cal.App.4th 156, 167–168, in proximity to the truism that "[t]oo liberal a grant of sanctions risks chilling zealous advocacy." We find more to the point, however, that court's recognition of the "three types of submitted papers that warrant sanctions: factually frivolous (not well grounded in fact); legally frivolous (not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law); and papers interposed for an improper purpose." (*Id.* at p. 167.) As the court emphasized, the sanctions at issue there were imposed solely on the ground that the offending motion was "legally frivolous." (*Id.* at p. 167.) It was in this context that the court adopted the Ninth Circuit's warning that the equivalent federal rule must not be so construed as to " 'conflict with the primary duty of an attorney to represent his or her client zealously.' " (*Id.* at pp. 167–168, quoting *Operating Engineers Pension Trust v. A-C Co.* (9th Cir. 1988) 859 F.2d 1336, 1344.) " 'Forceful representation often requires that an attorney attempt to read a case or an agreement in an innovative though sensible way. Our law is constantly evolving, and effective representation sometimes compels attorneys to take the lead in that evolution. [Federal Rules of Civil Procedure,] [r]ule 11 must not be turned into a bar to legal progress.' " (*Guillemin,* at p. 168.) The court concluded that the movant's argument there, while ultimately not persuasive, "was not frivolous and he was entitled to zealously argue the point." (*Ibid.*)

Here the order was not made solely, or even primarily, on the ground of legal frivolousness. It also rested on the ground, which we find far more compelling on this record, that the motion for relief from the judgment was filed for a dilatory or obstructive purpose. The court's finding of such a purpose is amply supported by the record, a close study of which discloses an indifference to factual accuracy that is not only objectionable in its own right but also strongly indicative of a goal other than victory. Nothing short of a book could describe all the ways in which Gens and his attorneys have sought to distract and mislead the courts in this matter, but an illustrative example may be found in the recurring assertion that he remained ignorant of the arbitration proceeding against him until January 12, 2007, which was four days before the hearing on the merits. At that time he wrote to the arbitration administrator asserting, with characteristically gravid vagueness, that "[t]he above case has never been properly served and noticed." On January 25, 2007, he offered a similarly vague denial of notice in connection with H&C's application for an attachment, telling the court that he had "found out about" this case two days before the hearing when he happened to visit the court's Web site in connection with another, unspecified matter. The trial court reviewed a sizable batch of declarations showing that, as we wrote in *Gens I,* "over the three weeks commencing on December 10, 2006, servers made at

least 30 attempts to personally deliver the moving papers to Gens . . . . On January 2, 2007, service was achieved . . . ."[9] (*Gens I, supra*, H031383.) After reviewing these materials, the trial court observed—in remarks with which we found ourselves in complete accord—that it did not recall "ever seeing more evidence indicating an attempt to avoid service of process by an individual than what I have seen in reviewing this file."

Undeterred by this finding, Gens filed a declaration less than four months later in which he stated, "The first time that I was given notice of the AAA case was on the late Friday afternoon of January 12, 2007, the last business day before the AAA hearing. I was called by a staff person at the AAA . . . to confirm the site of the AAA Arbitration hearing."[10] H&C met this claim, once again, with the evidence of numerous attempts, including successful ones, to serve him. Though we are directed to no express findings on the subject, we presume that the trial court once again credited those proofs, particularly given the lack of any concrete reason not to do so.

By the time Gens moved for relief from the judgment, some seven months later, his claims about lack of notice had degenerated into abject chaos. The supporting memorandum frankly conceded what the trial court had already found: that no later than January 2, 2007, he had been served with notice of the arbitration proceeding—or, as the author of the memorandum wrote, was "finally served . . . with all of the documents related to the [arbitration] process." Yet in the accompanying declaration, Gens again asserted a "recollection" that he "first learned of the scheduled arbitration hearing on January 12, 2007, when a staff person from the AAA called me." No attempt was made to reconcile this "recollection" with the seeming concession in the memorandum that he was served on January 2.[11]

In addition to the chimerical nature of the factual premises on which the section 473 motion stood, the proffered *legal* grounds for the motion were

[9] Indeed, we noted that "good service may have been achieved earlier, on December 11, 2006." (*Gens I, supra*, H031383.) The materials served included not only the application for an attachment but numerous additional documents concerning the arbitration proceeding.

[10] Even this seemingly simple assertion is rendered ambiguous by the construction "was given notice." Someone trying to convey factual information might be expected to explain what he meant by "notice" (not to mention the "giv[ing]" of notice), or better yet, to forego legal jargon in favor of simple factual terms like "knowledge."

[11] On appeal, amazingly, Gens reverts to the original claim, asserting that he "first learned that there was a scheduled arbitration hearing date just a few days before the hearing, on January 12, 2007, when a staff person from the AAA called him." The tangled history of this claim perhaps serves best to illustrate the sagacity of the familiar lines, "O, what a tangled web we weave, When first we practise to deceive!" (Scott, Marmion, a Tale of Flodden Field (1843) canto VI, stanza 17, p. 280.)

grossly deficient on the face of the supporting papers. This was not a case of an unwarranted or unsound legal argument, or of seeking a departure from precedent, or indeed of constructing an argument without regard to precedent, but of presenting *no* coherent legal argument whatever. The motion for relief asserted—with typical vagueness—numerous deficiencies in H&C's representation of Gens, the underlying retainer agreement, and the arbitration proceeding, but made no attempt to articulate any "mistake, inadvertence, surprise, or excusable neglect" that might furnish a basis for relief under section 473(b). Indeed, this remains true on appeal; Gens and Matthews have yet to point to anything more than a failure to assert a defense that might have been supported by the facts already known to them, or at least to Gens, had they but thought of it.

The present record, in short, reveals a long series of legal maneuvers that the trial court could properly find, and manifestly did find, were intended not to defeat H&C but to obstruct, delay, and impede its inevitable victory. In this the matter resembles the venerable case of *Keown v. Trudo* (1925) 71 Cal.App. 155 [234 P. 910], where the plaintiff, an attorney, engaged in various procedural machinations including inordinately delayed filings, procedurally and substantively deficient motions, untimely requests for relief, implausible denials of notice, and papers filled with "manifest inaccuracies and contradictions." (*Id.* at p. 157.) The appeal itself was untimely, having been filed more than three years late. The court observed that its "futil[ity]" could not "be laid altogether to the ignorance of appellant," who had once told a judge, apparently with pride, that "this case would take ten years." (*Id.* at p. 158.) The reviewing court assessed a fine for prosecuting a frivolous appeal, expressing the hope that "[u]nder that infliction," the appellant "m[ight] not be unduly exuberant" over his suit's survival for seven-tenths of its predicted lifespan. (*Ibid.*)

The court below quite properly found that the purpose of the motion was not to assert any arguably legitimate legal right but to frustrate and impede what Gens and his attorneys knew was an inevitable defeat. Indeed it appears to this court that if this case involves any "chill" bearing on the propriety of a sanctions award, it resides not in any tendency to inhibit zealous advocacy but in the enormous snow job that Gens and his attorneys have heaped upon their opponent, the trial court, and this court.

No error appears.

## DISPOSITION

The judgment is affirmed.

Premo, J., and Elia, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 14, 2012, S199114.