Filed 9/16/14  Bleau Fox v. Rabadi CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

| | |
|---|---|
| BLEAU FOX, | B249499 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC490047) |
| v. | |
| AHED RABADI et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly E. Kendig, Judge.  Affirmed.

Law Offices of Kamal A. Bilal and Kamal A. Bilal for Defendants and Appellants.

Bleau Fox, Thomas P. Bleau and Martin Fox for Plaintiff and Respondent.

_____

The trial court entered a default judgment pursuant to Code of Civil Procedure section 585[1] for more than $100,000 in unpaid legal fees in favor of Bleau, Fox, a P.L.C., against its former client Ahed Rabadi. On appeal Rabadi contends the court erred in denying his motion to vacate default pursuant to section 473, subdivision (b), and his motion to reconsider that order pursuant to section 1008. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Complaint and Entry of Default*

In a Judicial Council form complaint for breach of contract filed August 10, 2012, Bleau Fox sought $116,434.81 in damages, alleging Rabadi had entered into a retainer agreement with the law firm and thereafter refused to pay for fees and costs expended on his behalf. The complaint identified Hootan T. Farahmand of the Law Office of Hootan T. Farahmand as attorney for Bleau Fox.

The proof of service stated the summons, complaint and related documents were served by substituted service on August 20, 2012 at Rabadi's business at 200 North Glendale Avenue, Glendale, by leaving them with, or in the presence of, the person in charge, "Rolan 'Doe' (refused to give last name)" and by mailing them to Rabadi at the same address. The attorney service's declaration of diligence stated efforts to personally serve Rabadi at the Glendale address on August 17, 18 and 20 had been unsuccessful. The proof of service, filed with the court on August 23, 2012, identified Thomas P. Bleau of Bleau Fox as attorney for the law firm.[2]

No answer was filed. On October 17, 2012 Farahmand on behalf of Bleau Fox filed a request for entry of default, which the clerk entered the same day. The declaration of mailing reflected service on Rabadi by first class mail to the Glendale address used for substituted service, as well as to a residential address in Granada Hills.

---

[1] Statutory references are to the Code of Civil Procedure.

[2] A formal substitution of attorney was filed in the lawsuit on February 5, 2013, substituting Bleau for Farahmand on February 5, 2013

2

2. *The Motion for Order Setting Aside Default*

On January 11, 2013, approximately three months after the default was entered, Rabadi through his counsel, Kamal A. Bilal, moved for an order vacating and setting aside his default on the ground Rabadi's and his then attorney's failure to respond to the complaint was "due to mistake, neglect, surprise and/or inadvertence," citing section 473, subdivision (b). The thrust of the motion was that Bleau Fox had deliberately engaged in tactics designed to thwart Rabadi's ability to defend himself and to obtain a quick default.

The moving papers, supported by declarations from Rabadi and Sandy Rabadi, Rabadi's niece, explained Rabadi owns a number of gas stations and other properties that he manages from a central office in Woodland Hills—a fact Bleau Fox, which had represented Rabadi for a number of years, knew. However, rather than personally serve Rabadi at his office or his current home residence, which was also known to Bleau Fox, the summons and complaint were left with a cashier at one of Rabadi's gas stations. The documents remained in a drawer at the gas station for several weeks before being forwarded to Rabadi sometime in mid- or late-September. At that point Rabadi spoke with his niece, an attorney who had assisted him with other legal matters, gave copies of the summons and complaint to her and asked for her help. Rabadi also declared he did not receive the request for entry of default until November 2012, explaining he had moved from the Granada Hills residence where it had been mailed in 2006 and sold the property in 2010. The current owner of the property eventually gave the document to Rabadi. He never received the request to enter default mailed to the Glendale gas station.

In her declaration Sandy Rabadi stated she and Farahmand left a number of voicemail messages for each other and had at least two telephone conversations. Sandy Rabadi declared she advised Farahmand that she was an attorney calling on behalf of Rabadi and that Rabadi wanted to resolve the matter. She requested an extension of time to respond to the complaint pending those discussions; Farahmand responded affirmatively to the request: "In my communications with Hootan Farahmand, he assured me, and I believed, that defendant had an open extension to respond to the complaint and

3

that plaintiff was desirous of resolution. At no time did he tell me plaintiff would be filing a Request to Enter Default. I was not served with a copy of the Request to Enter Default." Sandy Rabadi explained she specializes in criminal law and recommended in mid-October that her uncle retain an attorney who was more familiar with contract law when a settlement appeared unlikely. According to Bilal, Rabadi discussed the lawsuit with him in November 2012 and retained him in late-November.

Farahmand's declaration filed with Bleau Fox's opposition papers told a rather different story about his interaction with Sandy Rabadi. According to Farahmand, he had only one telephone message from her, which he received on August 23, 2012 (three days after substituted service was effected at the Glendale gas station), asking that he call her back regarding the lawsuit. He returned the call on August 24, 2012; Sandy Rabadi answered, explained she was a criminal attorney and said she needed to call him back because she was stepping into court. Nothing more was discussed in that call, and Sandy Rabadi never called him back. Farahmand left a message for Sandy Rabadi at the number he had previously called on August 29, 2012. He received no response. Farahmand stated he had not agreed to extend the time to respond to the complaint in his conversation with Sandy Rabadi or at any other time. Farahmand also declared he received a telephone call on December 7, 2012 from an office assistant at Bilal's office who asked Farahmand to email her a copy of the complaint, which he did on December 10, 2012. He subsequently received a letter from Bilal, dated December 7, 2012, which confirmed the request for a copy of the complaint.[3] Based on Farahmand's declaration Bleau Fox argued Rabadi had not demonstrated excusable neglect in failing to respond to the complaint.

---

[3] Farahmand's declaration stated no one had objected or complained to him regarding the manner of service of the complaint. In a separate declaration Martin Fox of Bleau Fox attached documents concerning the Granada Hills residence that reflected the 2010 sale was an intrafamily transfer and as of 2012 Rabadi still received tax bills for property he owned in Nevada at that address.

After receiving a reply memorandum and hearing oral argument, the trial court denied the motion.  The court ruled, with respect to the mandatory aspect of section 473, subdivision (b), Sandy Rabadi's declaration did not clearly accept fault for the failure to file a timely answer[4] and, with respect to the discretionary portion of the statute, she did not absolve her uncle-client of fault.  Moreover, the court found the declaration itself not credible.  As it explained during the hearing, unlike Farahmand's declaration, which contained the exact dates of his contacts with Sandy Rabadi, her declaration was vague about when their conversations supposedly occurred.  Finally, the court observed, even crediting Rabadi's assertion he did not receive the summons and complaint until mid-September, rather than late August as asserted in Farahmand's declaration, that was still a full month prior to entry of the default; and there was no satisfactory explanation for the failure to respond during that time.

3. *The Motion for Reconsideration*

Four court days after the court's denial of the motion, Rabadi moved for reconsideration pursuant to section 1008, attaching as new evidence a declaration from Sandy Rabadi in which she accepted full responsibility for the failure to file a timely answer to the complaint.  In his declaration in support of reconsideration, Bilal explained, when he had previously discussed the case with Sandy Rabadi, "she would not sign a declaration admitting fault for the entry of default" and had not told him all the relevant facts.  For her part, Sandy Rabadi again declared she left a number of detailed voice messages for Farahmand, had at least two telephone conversations with him and requested an extension of time to respond to the complaint pending settlement discussions.  However, she now added, "It was my mistake to rely solely on Mr. Farahmand['s] verbal agreement to grant an extension without a specific deadline to file a response to the complaint. . . .  [¶] . . . [¶]  6.  Once our settlement discussions broke down, I made the mistake of not asking Mr. Farahmand for a short extension so that

---

[4]     The court also observed it was unclear from Sandy Rabadi's declaration whether she had actually represented her uncle in connection with the lawsuit.

5

either I could assist defendant in responding to the complaint in pro per or to allow defendant time to seek other counsel. Unfortunately, I made the mistake of not realizing that once settlement discussions ceased, so did any extension Mr. Farahmand said he would grant while we were discussing settlement."

After receiving an opposition memorandum from Bleau Fox (with no new declarations) and a reply from Rabadi and hearing oral argument, the trial court denied the motion for reconsideration, ruling Sandy Rabadi's second declaration was not new evidence within the meaning of section 1008 because the information was previously available: "You know that different declaration could have been submitted the first time. It doesn't give me jurisdiction to reconsider." The court also explained it had previously found Sandy Rabadi was not credible with respect to the circumstances leading to the default, in contrast to Farahmand, who the court had found "completely credible," and then stated Sandy Rabadi's "willingness to alter the underlying facts in her most recent declaration only underscores that this remains true."[5]

Following Bleau Fox's submission of a written declaration to prove damages, judgment was entered on May 31, 2013 for $110,110.30, including $3,411.72 in prejudgment interest and $549.50 in costs. Rabadi filed a timely notice of appeal.

## DISCUSSION

1. *Governing Law*; *Standard of Review*

A motion to vacate a default """"is addressed to the sound discretion of the trial court, and in the absence of a clear showing of abuse . . . the exercise of that discretion will not be disturbed on appeal."'" [Citations.] The appropriate test for abuse of

[5] With respect to the two Sandy Rabadi declarations, the court observed, "[H]er new story is that she made the mistake of not asking Mr. Farahmand for a short extension after settlement discussions failed, where she previously claimed that Mr. F[arahmand] had granted the defendant an open extension to respond to the complaint pending settlement discussions. So she's contradicted herself, and I believe that [the] current declaration is also internally contradictory" "I did not find Sandy Rabadi particularly, even in this declaration, credible with respect to the default because the fact that she's willing to alter the declaration really makes me — raises questions of her credibility."

discretion is whether the trial court exceeded the bounds of reason." (*Strathvale Holdings v. E.B.H.* (2005) 126 Cal.App.4th 1241, 1249; accord, *Anastos v. Lee* (2004) 118 Cal.App.4th 1314, 1318-1319.)

If a ruling turns on a disputed issue of fact, the trial court's express and implied factual determinations are not disturbed on appeal if supported by substantial evidence. (*Strathvale Holdings v. E.B.H., supra,* 126 Cal.App.4th at p. 1250; see *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.) "When a finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. [Citations.] [¶] When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court." (*Green Trees Enterprises, Inc. v. Palm Springs Alpine Estates, Inc.* (1967) 66 Cal.2d 782, 784-785; see *Griffith v. San Diego College for Women* (1955) 45 Cal.2d 501, 508 ["[w]hen an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed"]; accord, *Capo for Better Representation v. Kelley* (2008) 158 Cal.App.4th 1455, 1462.) "Moreover, [under the substantial evidence test] we defer to the trier of fact on issues of credibility." (*Lenk v. Total-Western, Inc*. (2001) 89 Cal.App.4th 959, 968.)

In reviewing the trial court's ruling on a request for relief from default, "'It is the policy of the law to favor, whenever possible, a hearing on the merits. Appellate courts are much more disposed to affirm an order when the result is to compel a trial on the merits than when the default judgment is allowed to stand. [Citation.]' ""Even in a case where the showing . . . is not strong, or where there is any doubt as to setting aside of a default, such doubt should be resolved in favor of the application.'"" (*Ramos v.*

7

*Homeward Residential, Inc*. (2014) 223 Cal.App.4th 1434, 1444 [internal citations & italics omitted]; accord, *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980 ["[b]ecause the law favors disposing of cases on their merits, 'any doubts in applying section 473 must be resolved in favor of the party seeking relief from default'"].)

> 2. *The Trial Court Did Not Abuse Its Discretion in Concluding Rabadi Had Failed To Show His Default Had Been Entered Based on Mistake or Excusable Neglect*

Section 473, subdivision (b), authorizes the trial court to relieve a party from a default judgment or dismissal entered as a result of the party's or his or her attorney's mistake, inadvertence, surprise or neglect. It provides for both mandatory and discretionary relief. Mandatory relief is available "whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect . . . unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (§ 473, subd. (b).) If the statutory conditions are satisfied, the court must grant relief. (*Solv-All v. Superior Court* (2005) 131 Cal.App.4th 1003, 1008; *Metropolitan Service Corp. v. Casa de Palms, Ltd.* (1995) 31 Cal.App.4th 1481, 1487.)

When there is no sufficient attorney affidavit of fault, discretionary relief alone is available to a party who has defaulted: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." (§ 473, subd. (b).) Neglect is excusable only if a reasonably prudent person under similar circumstances might have made the same error. (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 276; *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1423; see *Solv-All v. Superior Court, supra,* 131 Cal.App.4th at p. 1007.) A party seeking relief under section 473, subdivision (b), bears the burden of proof. (*In re Marriage of Kieturakis* (2006) 138 Cal.App.4th 56, 80.)

8

Without question, Sandy Rabadi's initial declaration neither accepted fault for her uncle's failure to timely respond to Bleau Fox's complaint nor suggested the default was entered as a result of her own mistake or neglect. Rather, her declaration, like the balance of the moving papers, accused Bleau Fox and its counsel of engaging in ethically questionable conduct intended to impede Rabadi's ability to defend the case on the merits and insisted the law firm's gamesmanship was the cause of the default. Mandatory relief under section 473, subdivision (b), was not available.

As for discretionary relief, if the trial court had believed the declarations of Rabadi and Sandy Rabadi, it would have been well within its discretion to vacate the default for their excusable neglect. But it did not, and, as discussed, we must defer to its credibility determinations. (See *Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 915.) According to Farahmand's chronology, which was accepted by the trial court, although the summons and complaint were not served in the most commendable fashion, Rabadi had the documents more than six weeks prior to entry of the default in mid-October 2012 and did nothing in response to the lawsuit, other than speak to his niece, until late November 2012 when he hired Bilal. His newly retained counsel then waited another six weeks to determine the status of the case and move to vacate the default. For her part, according to Farahmand, Sandy Rabadi only placed one, nonsubstantive telephone call to counsel for Bleau Fox and answered another without requesting an extension of time to respond or otherwise seeking to advance the litigation. The trial court was fully justified in concluding Rabadi was responsible for the decision (explicit or tacit) to ignore the complaint and that his conduct in this regard was neither prudent nor reasonable.

"'It is the duty of every party desiring to resist an action or to participate in a judicial proceeding to take timely and adequate steps to retain counsel or to act in his own person to avoid an undesirable judgment. Unless in arranging for his defense he shows that he has exercised such reasonable diligence as a man of ordinary prudence usually bestows upon important business his motion for relief under section 473 will be denied. [Citation.] Courts neither act as guardians for incompetent parties nor for those who are

9

grossly careless of their own affairs. . . . The only occasion for the application of section 473 is where a party is unexpectedly placed in a situation to his injury without fault or negligence of his own and against which ordinary prudence could not have guarded.'" (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1206; accord, *Hopkins & Carley v. Gens* (2011) 200 Cal.App.4th 1401, 1415 [although reviewing courts favor orders granting relief under section 473, subdivision (b), to effectuate the policy favoring trial on the merits, that policy does not invariably prevail over competing interests; ""'[w]hen inexcusable neglect is condoned even tacitly by the courts, they themselves unwittingly become instruments undermining the orderly process of the law"'"].) Based on its findings, which are supported by substantial evidence, the trial court was well within its ample discretion in denying the motion to vacate the default.

3. *The Trial Court Properly Denied the Motion for Reconsideration*

Section 1008 generally requires any motion for reconsideration be based "upon new or different facts, circumstances, or law." (§ 1008, subds. (a), (b); see *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1098.) Even if new or different facts are provided with the renewed motion, however, the moving party must provide the trial court with a satisfactory explanation as to why he or she failed to produce the evidence at an earlier time. (*People v. Safety National Casualty Corp.* (2010) 186 Cal.App.4th 959, 974 ["Facts of which a party seeking reconsideration was aware at the time of the original ruling are not 'new or different facts,' as would support a trial court's grant of reconsideration. [Citation.] To merit reconsideration, a party must also provide a satisfactory reason why it was unable to present its new evidence at the original hearing."]; *Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1457 ["[t]he party seeking reconsideration must provide not just new evidence or different facts, but a satisfactory explanation for the failure to produce it at an earlier time"].)[6]

---

[6]    We review a trial court's ruling on a motion for reconsideration under the abuse of discretion standard. (*Glade v. Glade, supra*, 38 Cal.App.4th at p. 1457.)

10

As the trial court explained, Sandy Rabadi's belated acknowledgement of fault did not constitute "new or different facts" within the meaning of section 1008. Sandy Rabadi's role in the events leading to the entry of default was at all times within Rabadi's knowledge or, at the very least, discoverable with due diligence; and the statement that Sandy Rabadi was not initially willing to accept responsibility for the entry of default—instead blaming the litigation tactics of Bleau Fox—does not constitute a satisfactory explanation for the presentation of what the trial court fairly termed a contradictory and internally inconsistent revised declaration. The trial court's denial of the motion for reconsideration was not an abuse of discretion.

## DISPOSITION

The judgment is affirmed. Bleau Fox is to recover its costs on appeal.

PERLUSS, P. J.

We concur:

WOODS, J.

SEGAL, J.*

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11