Filed 2/4/22  Carter v. Homestreet Bank CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CHRISTOPHER C. CARTER, <br><br> Plaintiff, Cross-defendant and Appellant, <br><br> v. <br><br> HOMESTREET BANK et al., <br><br> Defendants and Respondents; <br><br> STEVEN GRIFFIN, <br><br> Defendant, Cross-complainant and Respondent. | F080105 <br><br> (Super. Ct. No. BCV-17-102250) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from the orders of the Superior Court of Kern County.  David R. Lampe, Judge.

Law Office of Christopher C. Carter and Christopher C. Carter, in pro. per., for Plaintiff, Cross-defendant and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, Scott M. Reddie, Ben Nicholson and Paul R. Gaus for Homestreet Bank et al., Defendants and Respondents.

No appearance for Steven Griffin, Defendant, Cross-complainant and Respondent.

-ooOoo-

To collect monies allegedly owed to him, plaintiff Christopher C. Carter recorded abstracts of judgment against defendant Steven Griffin, a process by which Carter sought to create judgment liens against Griffin's real property in Kern County. Despite this process undertaken by Carter, Griffin was able to sell his existing home in Bakersfield (the Woodbourne property) and purchase a new home in the same city (the Flinders property) without ever paying the amounts purportedly due to Carter. In response, Carter commenced the instant litigation by filing a complaint for damages. Thereafter, Carter filed a first amended complaint asserting a new cause of action for judicial foreclosure. The judicial foreclosure cause of action added several new defendants, including the individuals who purchased the Woodbourne property from Griffin (Adriana Rodriguez and Carlos Gamez), the lender in that transaction (Homestreet Bank) and the lender providing funds for Griffin's purchase of the Flinders property (RPM Mortgage, Inc., now LendUS, LLC). These new defendants had a common title insurance carrier that provided a joint defense and legal counsel in this matter. At the Mandatory Settlement Conference (MSC), the same defendants through their insurance carrier's representative reached an oral settlement with Carter. The terms of the oral settlement agreement were placed on the record before the trial court.

Carter afterwards attempted to back out of the settlement terms he agreed to at the MSC, and he filed a motion under Code of Civil Procedure section 473 to set aside the oral settlement.[1] The settling defendants then filed a motion requesting the trial court to enforce the terms of the oral settlement agreement pursuant to section 664.6. After considering the evidence and argument regarding the two motions, the trial court (i) denied Carter's motion and (ii) granted the motion by the settling defendants to enforce the parties' settlement agreement. Carter now appeals from both rulings. The settling defendants are the respondents in the present appeal. As more fully explained in

_____

[1]      Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

2.

this opinion, we conclude that Carter has failed to show the trial court abused its discretion in denying the section 473 motion; and furthermore, substantial evidence supported the trial court's order enforcing the settlement under section 664.6. For these reasons, the orders of the trial court are hereby affirmed.

**FACTS AND PROCEDURAL HISTORY**

Abstracts of Judgment Recorded

Carter is a family law attorney who represented Griffin's ex-wife in divorce proceedings against Griffin in Riverside County. Related to those proceedings, three judgments for attorney fees were entered in favor of (or assigned to) Carter against Griffin. The amounts of the three judgments were allegedly $21,000, $25,000, and $19,788. The parties to the present appeal dispute whether—or the extent to which—the three judgments remain enforceable. In November or December 2016, abstracts of each of the three judgments were submitted by Carter to the Kern County Recorder's Office for recording. On or about December 19, 2016, the three abstracts of judgment were duly recorded by the Kern County Recorder's Office.[2]

The Real Property Transactions Conducted by Griffin

On December 22, 2016, several days after the abstracts of judgment were recorded, Griffin sold his residence located on Woodbourne Drive, Bakersfield, California to Gamez and Rodriguez. This property is referred to herein as the Woodbourne property. Homestreet Bank loaned funds to Gamez and Rodriguez in connection with their purchase, and Homestreet Bank recorded a deed of trust on the Woodbourne property.

On the same day, December 22, 2016, Griffin purchased a home on Flinders Street, Bakersfield, California. This property is referred to herein as the Flinders

---

[2] These were *amended* abstracts of judgment. Earlier versions thereof had inserted the wrong identity of the judgment debtor and so had to be amended.

3.

property.  RPM Mortgage, Inc. (now LendUS, LLC) loaned Griffin $338,675[3] to purchase the Flinders property, and to secure the loan, it recorded a deed of trust on said Flinders property.

The above real estate transactions were completed, and the escrows closed thereon, as of December 22, 2016, without Carter being paid any of the sums reflected in the abstracts of judgment.

The Interspousal Deed

On May 17, 2017, Griffin executed an interspousal deed conveying the Flinders property to "Steven M. Griffin and Cindy C. Russell, husband and wife, as joint tenants" (the interspousal deed).  The interspousal deed was recorded in the Kern County Recorder's Office on May 22, 2017.

Carter's Lawsuit is Filed

On September 25, 2017, Carter's original complaint was filed.  It was brought against the title company, Placer Title Company, and Doe defendants for negligence and damages.[4]  Allegedly, said parties had notice of the abstracts of judgment prior to the sale of the Woodbourne property and purchase of the Flinders property, but failed to pay the judgments from the escrows.  Griffin was subsequently named as Doe One.

On October 23, 2017, Carter's first amended complaint was filed.  The first amended complaint set forth a new cause of action for judicial foreclosure, numbered as the third cause of action.  The judicial foreclosure cause of action named as additional defendants the interested parties regarding the Woodbourne and Flinders property transactions.  This included the individuals to whom Griffin sold the Woodbourne property (i.e., Gamez and Rodriguez), the mortgage company/lender for the Woodbourne

---

**3**    We note that respondents' brief refers to the amount of the loan as $388,675. Although this amount appears to be a typographical error, for purposes of the present appeal it is unnecessary for us to resolve this discrepancy.

**4**    Placer Title Company was subsequently dismissed from the action.

transaction whose loan was secured by a deed of trust (i.e., Homestreet Bank), and the mortgage company/lender who provided funding, secured by a deed of trust, for Griffin's purchase of the Flinders property (i.e., RPM Mortgage, Inc.). The defendants against whom the judicial foreclosure cause of action was brought also included Griffin and Placer Title Company. Under this cause of action, Carter apparently sought judicial foreclosure of judgment liens as against all defendants on both properties.

Respondents Provided Defense by Same Insurance Carrier

In connection with their purchase of the Woodbourne property, Rodriguez and Gamez obtained a title insurance policy, as owners, from Westcor Land Title Insurance Company (Westcor). In relation to the same transaction, Homestreet Bank, the lending institution involved, obtained a Westcor title insurance policy, as the lender. Similarly, RPM Mortgage, Inc. (now LendUS, LLC) was insured by Westcor under a title insurance policy issued in connection with Griffin's purchase of the Flinders property. These three title insurance policies are collectively referred to as the Westcor policies. The Westcor policies contained provisions regarding (1) Westcor's duty to defend actions covered by the applicable policy, and (2) Westcor's right to settle claims arising under said policy.

Consistent with the Westcor policies, Westcor provided to its insureds a defense of Carter's lawsuit. In that regard, Westcor retained attorney Ben Nicholson of McCormick, Barstow, Sheppard, Wayte & Carruth LLP, to defend Gamez, Rodriguez, Homestreet Bank, and RPM Mortgage, Inc. (now LendUS, LLC). During the relevant time period, Barbara Farrell, the claims counsel for Westcor, was the person specially authorized by Westcor to direct the defense and settlement of the lawsuit on behalf of the insured parties, i.e., Gamez, Rodriguez, Homestreet Bank, and RPM Mortgage, Inc. (now LendUS, LLC).

A Settlement Reached at MSC

An MSC was scheduled in this matter for April 5, 2019. On March 27, 2019, one week prior to the MSC, Ben Nicholson, counsel for the several defendants insured by

5.

Westcor, requested that the defendants he represented be excused from personally attending the MSC because the defense provided to them in this matter was entirely "funded and controlled by Westcor" and said parties had "no settlement authority" and their attendance would not aid or promote settlement. It was further pointed out that Westcor's authorized representative (i.e., Ms. Farrell) would be ready to discuss the matter by telephone. The trial court granted the request to excuse such persons from personal attendance at the MSC and issued an order accordingly.

At some point in time before the MSC, RPM Mortgage, Inc. apparently merged into LendUS, LLC, causing LendUS, LLC to be the successor to RPM Mortgage, Inc. According to Barbara Farrell as the authorized representative of Westcor, "[b]ecause Defendant Lendus, LLC is a successor by merger to RPM Mortgage, this policy [i.e., RPM Mortgage's title insurance policy] applies to Defendant Lendus." On March 27, 2019, a substitution of attorney form was filed, which stated that Ben Nicholson is substituted in as the attorney for LendUS, LLC. The substitution of attorney form was served by e-mail and regular mail on all parties, including Carter, on March 27, 2019.

On April 5, 2019, the MSC proceeded. Attorney Nicholson was present, and, as stated by the trial court, was the attorney for defendants Rodriguez, Gamez, Homestreet Bank, and "Lendus, LLC." Griffin was present and represented himself; Carter was present and was acting as his own attorney. Westcor's authorized representative (Ms. Farrell) participated via telephonic appearance.

A settlement was orally agreed to during the MSC proceedings. It was not a settlement of the entire action since it did not resolve Carter's claims against Griffin. As the trial court stated, "Mr. Griffin, this settlement will not [a]ffect you." Rather, as explained by the trial court, the settlement was between Carter, as plaintiff, and "Rodriguez, Gamez, Homestreet Bank and Lendus, LLC" as defendants. The trial court referred to Rodriguez, Gamez, Homestreet Bank and LendUS, LLC as the "Nicholson

6.

clients." The trial court then proceeded to summarize and put on the record the terms of the parties' settlement.

The settlement terms, as stated by the trial court on the record, were as follows: "The Nicholson clients are going to pay $20,000 to [Carter] payable within 30 days of today. [¶] Upon receipt of the settlement proceeds, [Carter] is going to file all dismissals called for in the settlement agreement within 15 calendar days of receipt of the funds. [¶] [Carter] will release [the] Nicholson defendants from all claims known and unknown including but not limited to any claim that he has priority over the deed of trust on the Flinders property that is currently held by Lendus as a result of any judgments or other documents that are the subject of a judicial foreclosure action. [¶] Furthermore, [Carter] will dismiss the foreclosure action as against the … [¶] … [¶] Woodbourne property, but will proceed or will be allowed to proceed with the judicial foreclosure claim against the Flinders property subject to an agreement by [Carter] to subordinate his claims to the deed of trust currently held by Lendus on the Flinders property. [¶] Each party will bear their own attorney's fees and cost. [¶] The release will be of all claims known and unknown and the parties will specifically waive any protection under Section 1542 with respect to unknown claims."

As further stated on the record by the trial court, "[t]he Court will retain jurisdiction to specifically enforce the terms of this settlement pursuant to Section 664 et [seq.] [¶] The parties will undertake in good faith to take all actions and execute all documents reasonably necessary to carry out the terms of this agreement. [¶] This agreement is technically contingent upon the consent of Defendant, Lendus, LLC, at this point no one has any reason to doubt that Lendus will give consent, but it is a contingency and because it is a contingency I propose to continue this settlement

7.

conference to 8:30 a.m. [on April 12th].[5] [¶] … [¶] … And counsel are authorized to appear by court call, hopefully, to tell me that the contingency has been removed and today's transcript, together with the transcript of that proceeding, will be the enforceable agreement. [¶] It is contemplated that there will be a formal written settlement agreement setting forth these terms, but the parties understand that if for any reason that agreement is not drafted or is not signed the transcript of this proceedings will be [the] specifically enforceable settlement agreement."

Having recited the terms of the settlement on the record, the trial court then inquired whether it accurately expressed the terms of the settlement agreement. The settlement participants responded in the affirmative. For his part, Carter responded: "Everything that you said, your Honor, I understand that is what is agreed to and I just confirmed with Counsel I believe defendant's counsel is going to draft the formal agreement."

On April 11, 2019, Carter telephoned attorney Nicholson. During the course of this telephone conversation, Nicholson informed Carter that he had advised LendUS, LLC of the terms of the settlement agreement. After hearing this, Carter requested that Nicholson specially appear for him at the continued MSC on April 12, 2019 and Nicholson agreed to do so. On April 12, 2019, Nicholson appeared telephonically on behalf of his clients, i.e., the settling defendants, at the continued MSC. He also appeared specially for Carter. Nicholson informed the trial court that LendUS, LLC consented to the settlement agreement.

Efforts to Prepare Written Agreements to Effectuate Settlement

On May 1, 2019, attorney Nicholson e-mailed to Carter a set of proposed written documents to memorialize the parties' settlement. Carter responded by requesting some

---

**5** Although the trial court referred to obtaining the consent of LendUS, LLC, according to the settling defendants that action was clearly superfluous since Westcor alone controlled the settlement.

8.

"minor changes," including to modify the language in the documents to state the Flinders property is presently "solely in Steven Griffin's name. Cindy Russell's name is not on the deed …. Thus, there is no joint tenancy." (Underline omitted.) The next day, attorney Nicholson replied that, based on his review of the interspousal deed, it appeared the Flinders property was held in joint tenancy by Griffin and Ms. Russell. Carter later asked for a copy of the interspousal deed.

On July 3, 2019, notwithstanding the fact that the subordination of Carter's judgment lien on the Flinders property was clearly part of the oral settlement agreement reached at the MSC, Carter e-mailed Nicholson and announced that he was "not willing to allow subordination of my liens against Mr. Griffin's Flinders property without full payment of the outstanding judgment liens," and claimed that Nicholson had not made clear until the last minute that he was "represent[ing] the lien holder on Flinders." Carter ended his e-mail by stating he would be providing the trial court with a "notice of non-settlement."

Carter also sent a proposal in writing that would remove the subordination requirement from the agreed terms, which Nicholson rejected as inconsistent with the parties' settlement reached at the MSC. Nicholson's response to Carter's proposal stated as follows: "This … contradicts the settlement that was already agreed to and put on the record. You already agreed to subordinate your alleged liens on the Flinders property. It's too late to change your mind regardless of what impact you now believe this might have on your case against Mr. Griffin. Moreover, I have no idea what you are referring to when you suggest I sprung something on you at the last minute. You have known since the beginning of this case who my clients are, so I have no idea what you are talking about."

Carter's Motion to Set Aside Oral Settlement

On July 25, 2019, Carter filed his motion to set aside the oral settlement that was entered into on April 5, 2019 at the MSC. The motion was made under section 473 on

9.

the grounds of alleged mistake, inadvertence, surprise or excusable neglect, as well as on purported equitable grounds. Carter's motion asserted that, at the time he entered into the settlement, he was not aware that Griffin had executed an interspousal deed to include his wife, Cindy C. Russell, on the title to the Flinders property. He also claimed in his motion that he was unaware Nicholson's legal representation included LendUS, LLC, and moreover, he (Carter) did not fully appreciate or comprehend the implications of agreeing to subordination.

Settling Defendants' Motion to Enforce Settlement

On August 5, 2019, the defendants who entered into the oral settlement agreement with Carter at the MSC—i.e., Rodriguez, Gamez, Homestreet Bank and LendUS, LLC (collectively the settling defendants)—filed and served their motion to enforce the settlement agreement pursuant to the provisions of section 664.6. The motion was made on the grounds that the settling defendants and Carter "agreed to the terms of a settlement at a [MSC] on or about April 5, 2019 and April 12, 2019" but Carter has failed to execute agreements or to carry out the settlement as agreed to by the parties. According to the motion, Carter is "trying to renege because he no longer believes the settlement serves his purposes." Accordingly, the trial court was urged to "hold [Carter] to the agreement he made on the record and enforce the terms of the settlement."

The Trial Court's Orders

On August 29, 2019, both motions were heard together by the trial court. Following oral argument, the trial court took the matters under submission. By its minute order dated September 3, 2019, the trial court (i) denied Carter's motion to set aside the oral settlement and (ii) granted the settling defendants' motion to enforce the oral settlement.

In its September 3, 2019 minute order, the trial court provided a brief explanation for its orders. In denying Carter's motion to set aside the oral settlement, the trial court stated that Carter had failed to make an adequate showing of excusable neglect or

10.

equitable grounds for relief. The trial court found Carter's statements to the effect that he failed to inform himself of the status of title (i.e., the interspousal deed) against which he was claiming judgment liens, or that he did not fully understand or appreciate what subrogation would mean, insufficient grounds for relief. The trial court observed: "As an attorney, [Carter] is charged with a level of skill and understanding that does not permit relief from his purported mistakes or inadvertence in this case."

In granting the settling defendants' motion to enforce the settlement, the trial court held the individual settling defendants did not have to be present in court to personally consent to the settlement because "Westcor … is providing the defense for each of the settling Defendants and its representative, Barbara [Farrell], was specifically authorized to settle the matter on behalf of the settling Defendants." The trial court found that "Ms. [Farrell] had full authority to settle the matter" and she "appeared telephonically, personally spoke to, and agreed to the terms of the settlement agreement at the hearing." Further, "[t]he settling Defendants' attorney, Ben Nicholson also had specific authority from his clients to settle the matter and did so."

On September 19, 2019, the trial court issued a minute order stating that "the court's ruling on September 3, 2019 shall be the order of the court." In other words, the minute order of September 3, 2019 became the trial court's final order. On October 4, 2019, Carter filed his timely notice of appeal from both the order denying his motion to set aside the oral settlement *and* the order granting the settling defendants' motion to enforce the same settlement.

## DISCUSSION

### I.    Standard of Review

The trial court's decisions on the two motions at issue have distinct standards of review on appeal. As to the motion by Carter to set aside the oral settlement, our review is for abuse of discretion. (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257.) " 'A ruling on a motion for discretionary relief under section 473 shall

11.

not be disturbed on appeal absent a clear showing of abuse.' " (*Id*. at p. 257.) Whether the moving party has successfully carried its burden of showing a satisfactory excuse along with reasonable diligence "is a question entrusted in the first instance to the discretion of the trial court; its ruling will not be disturbed in the absence of a demonstrated abuse of that discretion." (*Hopkins & Carley v. Gens* (2011) 200 Cal.App.4th 1401, 1410.) Because a trial court's ruling on such a motion is "entitled to the usual appellate deference," the court's discretionary ruling "will not be reversed in the absence of a clear showing of abuse [citations], and factual inferences drawn by it are presumed correct." (*Shapiro v. Clark* (2008) 164 Cal.App.4th 1128, 1139–1140.) The same abuse of discretion standard is applied by us where the motion for relief was made on equitable grounds, rather than under section 473, subdivision (b). (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981.)

As to the motion by the settling defendants under section 664.6, we review for substantial evidence the lower court's factual findings made in connection with the motion, including whether the parties entered into a valid settlement and the terms thereof. (*Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1182; *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 815.) As summarized by *In re Marriage of Assemi* (1994) 7 Cal.4th 896: "[I]n ruling upon a section 664.6 motion for entry of judgment enforcing a settlement agreement, and in determining whether the parties entered into a binding settlement of all or part of a case, a trial court should consider whether (1) the material terms of the settlement were explicitly defined, (2) the supervising judicial officer questioned the parties regarding their understanding of those terms, and (3) the parties expressly acknowledged their understanding of and agreement to be bound by those terms. In making the foregoing determination, the trial court may consider declarations of the parties and their counsel, any transcript of the stipulation orally presented and recorded by a certified reporter, and any additional oral testimony. [Citations.] The standard governing review of such determinations by a trial court is

12.

whether the court's ruling is supported by substantial evidence." (*Id*. at p. 911.) Of course, to the extent the present appeal requires our review of a question of law, such as the construction and application of section 664.6, our review of such question is de novo. (*Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1253.)

## II. No Abuse of Discretion in Denial of Carter's Motion to Set Aside Settlement

As noted, the trial court denied Carter's motion to set aside the oral settlement. It was apparent to the trial court that Carter failed to present an adequate factual basis to justify such relief under section 473 or on equitable grounds. In that regard, Carter's showing to the effect that he did not check the status of title to the Flinders property against which he was claiming foreclosure of judgment liens, or that he did not fully grasp the legal ramifications of what subrogation would mean, were insufficient grounds for relief. As the trial court succinctly observed: "As an attorney, [Carter] is charged with a level of skill and understanding that does not permit relief from his purported mistakes or inadvertence in this case."

In the instant appeal, Carter claims the trial court abused its discretion. We disagree. The test for an abuse of discretion is whether the trial court exceeded the bounds of reason, all of the circumstances before it being considered. (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598.)[6] As explained below, the trial court's ruling was clearly within the bounds of its reasonable discretion under the circumstances before it, and Carter has failed to show that any abuse of discretion occurred.

Section 473 provides in relevant part, "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or

---

[6] We recognize that since the law favors disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from a default. (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233.) For that reason, a trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits. (*Ibid.*) At the same time, we do not ignore other important public policy considerations, such as the strong public policy in favor of settlements. (See *Huens v. Tatum* (1997) 52 Cal.App.4th 259, 264–265.)

13.

other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." (§ 473, subd. (b).) The party filing a motion under section 473, subdivision (b) bears the burden of establishing a right to relief, including proof of a *satisfactory excuse* for the default, dismissal, or other proceeding taken against him or her. (*Hopkins & Carley v. Gens*, *supra*, 200 Cal.App.4th 1401, 1410; *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1420, 1423.) In other words, the moving party must show there was *excusable* conduct or error; i.e., excusable mistake, surprise or neglect, which would warrant setting aside the challenged judgment or order. (*Comunidad en Accion v. Los Angeles City Council* (2013) 219 Cal.App.4th 1116, 1132; *Kendall v. Barker* (1988) 197 Cal.App.3d 619, 623–624.) In that regard, it is "simply not enough to assert a general state of misapprehension or ignorance." (*Hopkins & Carley v. Gens*, *supra*, 200 Cal.App.4th at p. 1410.) Rather, the moving party must "specify the actual cause of his failure … and explain why that failure should be excused." (*Ibid.*)

The terms set forth in section 473 of mistake, inadvertence, surprise and excusable neglect as the grounds for relief have been defined as follows: "Mistake is not a ground for relief under section 473, subdivision (b), when 'the court finds that the "mistake" is simply the result of professional incompetence, general ignorance of the law, or unjustifiable negligence in discovering the law ….' (8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, § 155, p. 749.)" (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1206.) Further, "[t]he term 'surprise,' as used in section 473, refers to ' "some condition or situation in which a party … is unexpectedly placed to his injury, without any default or negligence of his own, which ordinary prudence could not have guarded against." ' [Citation.]" (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 611; accord, *Hearn v. Howard*, *supra*, 177 Cal.App.4th at p. 1206.) Finally, "as for inadvertence or neglect, '[t]o warrant relief under section 473 a litigant's neglect must have been such as might have been the act of a reasonably prudent person under the same circumstances. The inadvertence contemplated by the statute does not

14.

mean mere inadvertence in the abstract. If it is wholly inexcusable it does not justify relief. [Citations.] It is the duty of every party desiring to resist an action or to participate in a judicial proceeding to take timely and adequate steps to retain counsel or to act in his own person to avoid an undesirable judgment. Unless in arranging for his defense he shows that he has exercised such reasonable diligence as a man of ordinary prudence usually bestows upon important business his motion for relief under section 473 will be denied. [Citation.] Courts neither act as guardians for incompetent parties nor for those who are grossly careless of their own affairs…. The only occasion for the application of section 473 is where a party is unexpectedly placed in a situation to his injury without fault or negligence of his own and against which ordinary prudence could not have guarded.' [Citation.]" (*Hearn v. Howard*, *supra*, 177 Cal.App.4th at p. 1206; accord, *Henderson v. Pacific Gas & Electric Co*. (2010) 187 Cal.App.4th 215, 229–230.)

Here, in connection with his motion to set aside the settlement under section 473, Carter argued that, when he entered into the settlement at the MSC, he was unaware of the interspousal deed by which Griffin had added his wife onto the title to the Flinders property. Carter also claimed that, although he expressly agreed to the subordination of his judgment lien with respect to the Flinders property, he did not fully appreciate or comprehend "the legal ramifications" of subordination. These assertions by Carter are wholly inadequate to reflect the existence of excusable surprise, neglect or mistake, but instead evidence a failure on Carter's part to utilize even minimal prudence and diligence in the conduct of his own affairs. The interspousal deed was recorded in May 2017, well before Carter's judicial foreclosure cause of action was filed and nearly two years before the MSC and settlement took place. Under the circumstances, for Carter to fail to ascertain the actual status of the underlying title until sometime after the MSC (i.e., postsettlement) clearly falls short of excusable conduct. Ordinary prudence could have and would have guarded against this alleged lack of knowledge of title by use of minimal diligence to check the status of title earlier. (*Hearn v. Howard*, *supra*, 177 Cal.App.4th at

15.

p. 1206 [no excusable error if the situation was one that ordinary prudence could have guarded against].)

Additionally, Carter's assertion that he did not fully appreciate or comprehend the legal ramifications of subordination also failed to show any excusable error. No adequate explanation was given to show the reasonableness of any misconception by Carter of the meaning of subordination—a fairly straightforward concept—or of his failure to investigate the matter further prior to settling. (See *Hopkins & Carley v. Gens*, *supra*, 200 Cal.App.4th at pp. 1412–1413 [if a mistake of law is claimed, the determining factors are the reasonableness of the misconception and the justifiability of lack of determination of the correct law].)

Furthermore, in choosing to represent himself, rather than hiring legal counsel more knowledgeable in real estate law, Carter may not take advantage of that situation by later claiming ignorance of relevant law. "The law does not entitle a party to proceed experimentally without counsel and then turn back the clock if the experiment yields an adverse result. One who voluntarily represents himself 'is not, for that reason, entitled to any more (or less) consideration than a lawyer. Thus, any alleged ignorance of legal matters or failure to properly represent himself can hardly constitute "mistake, inadvertence, surprise or excusable neglect" as those terms are used in section 473.' [Citation.]" (*Hopkins & Carley v. Gens*, *supra*, 200 Cal.App.4th at p. 1413, citing *Goodson v. Bogerts, Inc*. (1967) 252 Cal.App.2d 32, 40.)

The inexcusable nature of Carter's conduct is further highlighted by the fact that he is an *attorney*. " 'Conduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument, is not … excusable.' " (*Zamora v. Clayborn Contracting Group, Inc*., *supra*, 28 Cal.4th at p. 258.) The duty of competence imposed on attorneys includes the obligation to know the plain and elementary principles of law which are commonly known by well-informed attorneys, and also to discover those additional rules of law which, although not commonly known,

may readily be found by standard research techniques. (*Hopkins & Carley v. Gens*, *supra*, 200 Cal.App.4th at p. 1414.) "Where the law is doubtful or uncertain, an attorney is obliged ' "to undertake reasonable research in an effort to ascertain relevant legal principles and to make an informed decision as to a course of conduct based upon an intelligent assessment of the problem." ' [Citation.]" (*Ibid.*) As an attorney, Carter's failure to grasp the legal ramifications of subordination and/or to conduct further research if he was uncertain, clearly did not meet the above professional standard.

In *Hopkins & Carley v. Gens*, *supra*, 200 Cal.App.4th 1401, the trial court denied section 473 relief where the moving party, an attorney representing himself in the litigation, argued a judgment entered against him should be set aside because he mistakenly failed to timely recognize he had a viable defense to the claims against him. (*Hopkins & Carley v. Gens*, at p. 1405.) After the motion was denied, the moving party appealed. In affirming the denial of section 473 relief, the Court of Appeal concluded that no excusable conduct had been shown: "As one trained in the law, [the appellant] must be charged with knowledge both of the limits of his own competence as an attorney and of the means to enlarge his understanding. His inexcusable negligence as an attorney must be imputed to him as a client." (*Hopkins & Carley v. Gens*, at p. 1415.) Similarly, here, Carter's failure to check the status of title to the Flinders property in connection with his action for judicial foreclosure premised on judgment liens against that same property, as well as his claimed failure to appreciate the legal ramifications of the concept of subordination (but proceeding with the settlement nonetheless), all while serving as his own attorney, fell below the standard of care and were inexcusable.

Finally, we reject Carter's claim that relief under section 473 should have been granted because he was allegedly unaware of the fact that attorney Nicholson's legal representation of defendants at the MSC *included* LendUS, LLC, the successor of RPM Mortgage, Inc. As correctly pointed out by the settling defendants, there was ample evidence in the record establishing that Carter was fully informed of Nicholson's

17.

representation of LendUS, LLC. This evidence included certain documents filed and served about one week prior to the MSC hearing, including the substitution of attorney form which clearly identified Nicholson as the attorney for LendUS, LLC, and the MSC statement expressly stating and discussing Nicholson's representation of LendUS, LLC. Additionally, at the MSC, the trial court clearly and conspicuously announced the fact that Nicholson was present representing defendants "Adriana Rodriguez, Carlos Gamez, Homestreet Bank, … and Lendus, LLC." Based on the above evidence, we agree with the settling defendants that any claimed unawareness by Carter regarding the legal representation of LendUS, LLC can only be attributed to his unjustified failure to read documents apprising him of this fact and/or his failure to listen at the MSC. This plainly constitutes inexcusable conduct and, thus, does not provide a basis to set aside the settlement.[7]

In the alternative to seeking relief from the settlement under section 473, subdivision (b), Carter offers a conclusory assertion that the trial court should have granted his motion to set aside the settlement based on purported "equitable" grounds for relief. However, no discernable equitable grounds are mentioned by appellant in his appeal. Instead, Carter offers essentially the same failed arguments which we have rejected hereinabove concerning the statutory grounds for relief under section 473. An especially material deficiency is the fact that Carter's appeal fails to discuss either extrinsic fraud or extrinsic mistake, the presumed rationale for seeking equitable relief here.[8] "Extrinsic fraud usually arises when a party is denied a fair adversary hearing

---

[7] Further, Carter has not and cannot explain how his supposed misunderstanding on legal representation changes the reality that he expressly agreed in the settlement to subordinate his judgment lien on the Flinders property, which would be true regardless of who represented LendUS, LLC. In any event, as explained, his failure to be aware of Nicholson's representation of LendUS, LLC was not excusable.

[8] There is nothing in the record or briefing to suggest that Carter is contending the settlement or the trial court's orders relating thereto were "void" or void on their face.

because he has been 'deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.' " (*Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 471; accord, *Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 47.) Extrinsic mistake occurs "when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits." (*Rappleyea v. Campbell*, *supra*, 8 Cal.4th at p. 981.) "In contrast with extrinsic fraud, extrinsic mistake exists when the ground of relief is not so much the fraud or other misconduct of one of the parties as it is the excusable neglect of the defaulting party to appear and present his claim or defense. If that neglect results in an unjust judgment, without a fair adversary hearing, the basis for equitable relief on the ground of extrinsic mistake is present. [Citation.] Relief will be denied, however, if the complaining party's negligence permitted the fraud to be practiced or the mistake to occur. [Citation.]" (*Manson, Iver & York v. Black*, *supra*, 176 Cal.App.4th at p. 47.)

Because no basis for extrinsic fraud or extrinsic neglect are discussed or argued in Carter's appeal, he has failed to meet his burden of demonstrating the motion should have been granted on equitable grounds. Additionally, because of the perfunctory and conclusory nature of Carter's assertion of equity as an alternative ground, without any adequate legal and factual analysis to show the present case could potentially come within the concepts of extrinsic fraud or mistake, we conclude that the point has been forfeited on appeal. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655 [lack of adequate legal and factual analysis results in forfeiture of argument]; *Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 [same]; *Placer County Local Agency Formation Com. v. Nevada County Local Agency Formation Com*. (2006) 135 Cal.App.4th 793, 814 ["We need not address points in appellate briefs that are unsupported by adequate factual or legal analysis"]; *People v. Harper* (2000) 82

(§ 473, subd. (d); see *Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 19.)

Cal.App.4th 1413, 1419, fn. 4 [an argument raised in perfunctory fashion is deemed waived].)

Based on the foregoing, we conclude that the trial court correctly denied Carter's motion to set aside the settlement under section 473. No showing of excusable neglect or other excusable error was shown, nor were any equitable grounds for relief demonstrated. In short, Carter has failed to establish the trial court abused its discretion. Accordingly, the order denying Carter's motion to set aside the settlement is affirmed.

## III.   The Trial Court Properly Granted the Motion to Enforce Settlement under Section 664.6

Carter challenges the validity of the trial court's order enforcing the oral settlement under section 664.6. We begin our discussion of Carter's several claims of error by first setting forth an overview of section 664.6.

Section 664.6 provides, in pertinent part: "If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." (§ 664.6, subd. (a).) " 'Section 664.6 was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit.' " (*Bowers v. Raymond J. Lucia Companies, Inc*. (2012) 206 Cal.App.4th 724, 732.) This summary procedure to enforce settlements is available "when certain requirements that decrease the likelihood of misunderstandings are met." (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 585 (*Levy*).) "Thus the statute requires the 'parties' to stipulate in writing or orally before the court that they have settled the case. The litigants' direct participation tends to ensure that the settlement is the result of their mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting

20.

interpretations of the settlement.  [Citations.]  It also protects parties from impairment of their substantial rights without their knowledge and consent." (*Id.* at p. 585, fn. omitted.)

In hearing a section 664.6 motion, a trial court "should consider whether (1) the material terms of the settlement were explicitly defined, (2) the supervising judicial officer questioned the parties regarding their understanding of those terms, and (3) the parties expressly acknowledged their understanding of and agreement to be bound by those terms." (*In re Marriage of Assemi*, *supra*, 7 Cal.4th 896, 911.)  The trial court may consider declarations of the parties and their counsel, any transcript of the stipulation orally presented and recorded by a certified reporter, and any additional oral testimony. (*Ibid.*)  In ruling on such a motion, the trial court acts "as a trier of fact" to determine whether the parties entered into a binding settlement.  (*Kohn v. Jaymar-Ruby, Inc.* (1994) 23 Cal.App.4th 1530, 1533.)  On appeal, the trial court's findings are reviewed for substantial evidence.  (*Critzer v. Enos*, *supra*, 187 Cal.App.4th 1242, 1253.)

To qualify for relief under section 664.6, it must be shown that the parties themselves, not merely their attorneys, personally assented to the material terms of the settlement.  (*Levy*, *supra*, 10 Cal.4th at p. 586.)  However, a limited exception to this rule has been recognized where an insurance carrier is providing a defense to its insureds without reservation, is funding the settlement, and through its authorized adjuster or representative the insurance carrier has full control and authority over the settlement terms.  (*Fiege v. Cooke* (2004) 125 Cal.App.4th 1350, 1353–1355 (*Fiege*).)  In that situation, the appellate court in *Fiege* held it would be unnecessary and superfluous for the insured parties to appear at the settlement hearing or to give express assent to the terms of settlement reached by the insurance carrier.  (*Ibid.*)

A.      Carter's Contention Regarding Notice of Motion is Without Merit

As a preliminary matter, Carter argues the ruling on the motion to enforce settlement should be reversed because, allegedly, there was inadequate notice provided regarding the moving papers and reply papers in support of settling defendants' motion to

21.

enforce settlement. We disagree. Under section 1005, subdivision (b), "all moving and supporting papers shall be served and filed at least 16 court days before the hearing." If the moving papers are served by overnight delivery, the required 16-day period of notice before the hearing "shall be increased by two calendar days." (§ 1005, subd. (b).) Reply papers must be filed and served "at least five court days before the hearing." (*Ibid.*)

Here, the relevant proof of service demonstrates that the settling defendants filed and served their notice of motion and supporting papers on August 5, 2019, with service effectuated by overnight delivery. The noticed hearing date for the motion was August 29, 2019. By our calculations, service was accomplished 16 court days plus an additional two court days for service by overnight delivery, or a total of 18 court days, prior to the August 29, 2019 hearing. Therefore, it appears that adequate notice of motion was given pursuant to section 1005, subdivision (b). As to the reply, the proof of service relating to the reply papers shows that settling defendants filed and served their reply papers on August 22, 2019, using overnight delivery to effectuate service. Clearly, the reply was filed and served within the required five court days prior to the hearing. Section 1005, subdivision (c), further requires that reply papers shall be served "by personal delivery, facsimile transmission, express mail, or other means consistent with Sections 1010, 1011, 1012, and 1013, and reasonably calculated to ensure delivery to the other party or parties not later than the close of the next business day after the time the … reply papers … are filed." (§ 1005, subd. (c).) As noted, the proof of service of the reply papers indicates that service thereof was by overnight delivery, which appears to be in a manner consistent with section 1005, subdivision (c).

The referenced proofs of service adequately demonstrate that settling defendants' moving and reply papers were timely filed and served. Even if that were not the case, it appears that Carter's argument was effectively waived by the fact that he appeared and proceeded to argue the merits of the motion in the trial court. " '[I]t is well settled that the appearance of a party at the hearing of a motion and his or her opposition to the

22.

motion on its merits is a waiver of any defects or irregularities in the notice of the motion.…  Accordingly, a party who appears and contests a motion in the court below cannot object on appeal … that he [or she] had no notice of the motion or that the notice was insufficient or defective.' " (*Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1288, quoting *Tate v. Superior Court* (1975) 45 Cal.App.3d 925, 930.)  Moreover, even assuming for the sake of argument that any of the notices or papers were untimely served, Carter has failed to demonstrate any prejudice.  (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1107–1108.)

For all of the foregoing reasons, we reject Carter's claim of reversible error relating to the notice of motion and/or service of moving and reply papers.

B.    Substantial Evidence Showed the Existence of a Settlement Agreement Enforceable Under Section 664.6.

The transcript of the MSC hearing plainly establishes that Carter agreed to settle this matter with the settling defendants at the April 5, 2019 MSC.  Among other provisions, including that Carter would be paid $20,000, the settlement contained Carter's agreement to subordinate his judgment lien on the Flinders property to LendUS, LLC's deed of trust.  Indeed, in reciting the terms of the settlement on the record, the trial court on two separate occasions stated that Carter was agreeing to subordinate his claims to the deed of trust "currently held by Lendus on the Flinders property."  Further, Carter expressly confirmed his assent to all the terms recited by the trial court.  Carter stated as follows:  "Everything that you said, Your Honor, I understand that is what is agreed to …."  Further, as the MSC transcript reflects, the settling defendants were Rodriguez, Gamez, Homestreet Bank, and LendUS, LLC.  On behalf of the settling defendants, and in response to the trial court's query, attorney Nicholson confirmed that the on-the-record summary of the terms of the oral settlement was correct.

In the instant appeal, Carter argues the oral settlement cannot be enforced under section 664.6 because, among other things, the settling defendants did not personally

appear and give their assent before the court to the terms of the oral settlement. (See § 664.6, subd. (a).) In support, Carter relies on *Levy*, *supra*, 10 Cal.4th 578, which held that in providing an expedited enforcement mechanism in section 664.6 for settlements entered by *parties*, the Legislature intended the term "parties" to mean the litigants personally, not their attorneys. (*Levy*, at p. 586.)[9] As applied to oral settlements stipulated before the court, the rule announced in *Levy* means that it is not sufficient under section 664.6 for an attorney to orally agree to a settlement on his client's behalf; rather, the party must personally acknowledge his assent to the settlement before the court. (See *Murphy v. Padilla* (1996) 42 Cal.App.4th 707, 715–716 (*Murphy*) [under § 664.6, each party must personally assent to the oral settlement before the court; ratification by an attorney, acting as a party's agent, is insufficient]; *Johnson v. Department of Corrections* (1995) 38 Cal.App.4th 1700, 1709 (*Johnson*) [attorney's verbal agreement to oral settlement, on behalf of client, insufficient under § 664.6].) Based on *Levy*, *Murphy*, *Johnson*, and similar cases, Carter argues the trial court erred in granting enforcement under section 664.6 because the settling defendants did not give their assent personally before the court. In response to Carter's argument, the settling defendants contend that their personal presence and assent to the oral settlement before the court was not a prerequisite to enforcement under section 664.6 in this case, because the settlement came within the exception recognized in *Fiege*, *supra*, 125 Cal.App.4th 1350, regarding insurance-funded settlements. We shall begin by considering the settling defendants' contention.

As alluded to by the settling defendants, *Fiege* recognized a limited exception to the rule announced in *Levy* that, in order to enforce a settlement agreement under section 664.6, each of the settling parties must *personally* assent to the settlement in the manner

---

[9] We note that an amendment to section 664.6, effective January 1, 2021, provides that in *written* settlements, the term "party" includes the party's attorney. (§ 664.6, subd. (b)(2); see Stats. 2020, ch. 290, § 1, eff. Jan. 1, 2021.)

specified in the statute. According to *Fiege*, an exception applies with respect to an insured party where their insurance carrier is providing a defense without reservation, is funding the settlement, and through its authorized adjuster or other representative has full authority to settle without further involvement of its insured. (*Fiege*, *supra*, 125 Cal.App.4th at pp. 1353–1355.) In that circumstance, according to *Fiege*, the insured party's personal consent to a settlement reached by its insurance carrier would be superfluous. (*Id*. at pp. 1354–1355.)[10] As stated in *Fiege*, " 'Since *Levy* did not involve an insurance-funded settlement, we do not read *Levy* as precluding enforcement pursuant to section 664.6 of an insurance-funded settlement reached by an authorized insurance defense counsel or adjuster when the carrier has the contractual right to settle.' " (*Fiege*, *supra*, 125 Cal.App.4th at p. 1355, quoting *Robertson v. Chen* (1996) 44 Cal.App.4th 1290, 1293–1296.)[11]

Here, in deciding the section 664.6 motion, it appears the trial court found the *Fiege* analysis was applicable. The trial court held the individual settling defendants did not have to be present in court or personally consent to the settlement because "Westcor … is providing the defense for each of the settling Defendants and its representative, Barbara [Farrell], was specifically authorized to settle the matter on behalf of the settling Defendants." The trial court found that "Ms. [Farrell] had full authority to settle the matter" and she "appeared telephonically, personally spoke to, and agreed to the terms of the settlement agreement at the hearing." Further, "[t]he settling Defendants' attorney, Ben Nicholson also had specific authority from his clients to settle the matter and did so."

---

[10]    In *Fiege*, "[t]he defendants were all insured under policies that gave the insurers the right to settle without the defendants' consent and to bind the defendants to the settlement." (*Fiege*, *supra*, 125 Cal.App.4th at p. 1353.)

[11]    As our Supreme Court similarly stated: "[W]here the insured is fully covered by primary insurance, the primary insurer is entitled to take control of the settlement negotiations and the insured is precluded from interfering therewith." (*Commercial Union Assurance Companies v. Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 919.)

25.

Substantial evidence in the record supported the trial court's findings on these issues. Each Westcor policy contained provisions indicating (i) Westcor's duty to defend actions covered by the policy, and (ii) Westcor's right to settle claims arising under said policies. Pursuant to these policies, Westcor provided each of the settling defendants with a defense against Carter's lawsuit. This defense was provided without a reservation of rights and was entirely funded and controlled by Westcor. In addition to the insurance policies, the trial court also had declarations before it which reflected that Farrell and Nicholson, both of whom participated in the MSC, had full settlement authority on behalf of Westcor, while the settling defendants had no settlement authority. Furthermore, the declaration of Farrell indicated that because LendUS, LLC is a successor by merger to RPM Mortgage, Inc., the insurance policy entered by RPM Mortgage, Inc. "applies to Defendant Lendus." Based on the above described evidentiary record before the trial court, it appears that the *Fiege* analysis was applicable to the settlement in this case. Therefore, we reject Carter's argument that enforcement of the oral settlement under section 664.6 required the personal appearance and assent before the court of each of the settling defendants. Instead, the insurance carrier, Westcor, through its authorized representative, was authorized to reach the terms of settlement on behalf of the insured parties.

C.    The Referenced "Contingency" as to LendUS, LLC Does Not Require a Different Result

Although substantial evidence reflected that Farrell, as representative of the insurance carrier, was authorized to settle the case on behalf of each of the settling defendants, including LendUS, LLC, the trial court presiding over the MSC on April 5, 2019 stated the settlement was "technically contingent" on receiving the consent of LendUS, LLC; thus, the MSC hearing was continued to April 12, 2019 to allow the attorneys to return and inform the court of LendUS, LLC's consent to the settlement. At

26.

the continued hearing on April 12, 2019, attorney Nicholson reported to the trial court that LendUS, LLC consented to the settlement.

In his appeal, Carter argues that because the settlement was deemed *contingent* on LendUS, LLC's consent, and because that consent was not personally given before the trial court by LendUS, LLC in a manner consistent with section 664.6 as construed by *Levy*, the settlement agreement cannot be enforced under that section. As explained below, we disagree with Carter's argument because—despite the trial court's statement that Lendus, LLC's consent was needed—this case was and is closely analogous to *Fiege*.

When the trial court conducting the MSC required, as an apparent precaution, that the separate consent of LendUS, LLC be obtained, a suitable process was established by which that consent would be conveyed to the court. That is, the MSC would be continued until April 12, 2019, at which time counsel were authorized to appear "hopefully, to tell me [i.e., the trial court] that the contingency has been removed …." The parties agreed to that process, and that was precisely what occurred. It is not clear why the trial court conducting the MSC believed that LendUS, LLC's consent should be obtained, but the steps that were required by the trial court were fully complied with.[12] Moreover, this process imposed by the trial court for confirming LendUS, LLC's consent did not change the critical fact that the settlement was being authorized and directed by Westcor, as the settling defendants' insurance carrier. As discussed hereinabove, there was substantial evidence in the record indicating that Westcor was providing a defense without reservation, had the right and authority under the Westcor policies to reach a settlement, and was funding the settlement on behalf of all the settling defendants.

---

[12] In settling defendants' brief herein as respondents, it is stated that perhaps the trial court misconstrued a comment from Nicholson that he would like an opportunity to communicate with his client, LendUS, LLC, regarding the settlement, since he was having some difficulty at that time reaching LendUS, LLC.

27.

Additionally, we also observe there was evidence in the record that attorney Nicholson had full authority from Westcor (as did Farrell) with respect to settlement.

Under these unique facts and circumstances, we conclude the present case was analogous to *Fiege*, and came within the exception to *Levy* stated therein. As stated in *Fiege*, " 'Since *Levy* did not involve an insurance-funded settlement, we do not read *Levy* as precluding enforcement pursuant to section 664.6 of an insurance-funded settlement reached by an authorized insurance defense counsel or adjuster when the carrier has the contractual right to settle.' " (*Fiege*, *supra*, 125 Cal.App.4th at p. 1355.) The present case similarly involved (i) an insurance-funded settlement (ii) reached by an authorized insurance defense counsel or adjuster (iii) when the insurance carrier had the contractual right to settle. Therefore, as in *Fiege*, the consent of the insured, LendUS, LLC, was ultimately superfluous (*id*. at pp. 1354–1355), even though here the trial court insisted that LendUS, LLC's consent be confirmed in the manner indicated above. It follows that, at the April 12, 2019 continued hearing, when attorney Nicholson appeared and informed the trial court of LendUS, LLC's consent to the terms of settlement which had been put on the record, there was not a further requirement for purposes of enforcement under section 664.6 that LendUS, LLC be personally present at that time to give assent before the court. In conclusion, as in *Fiege*, the settlement reached here was enforceable under section 664.6.

Based on the foregoing, we conclude that substantial evidence established the existence and material terms of the oral settlement agreement between Carter and the settling defendants, and the oral settlement agreement was enforceable under section 664.6.

D.      Other Arguments by Carter Fail to Establish Reversible Error.

Carter raises a number of other arguments in his appeal, which we briefly consider in this part of our opinion. First, it appears that Carter is asserting that Griffin should have been included in, or made a party to, any settlement reached in this matter. Of

course, Carter could have, but apparently did not, insist at the MSC that there be a global settlement in which Griffin was a party. That did not happen. Instead, as the settlement recited at the MSC reflects, the settling parties chose to resolve issues or claims regarding some parties to the litigation, not all, as is permitted by section 664.6, subdivision (a). (§ 664.6, subd. (a) [settlement may be "of the case, or part thereof"].) In any event, we conclude that Carter's argument on this issue is forfeited on appeal because it was not raised in the trial court (*Ochoa v. Pacific Gas & Electric Co*. (1998) 61 Cal.App.4th 1480, 1488, fn. 3), and was not presented to this court with adequate legal discussion and citation to authority (*Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1399).

Second, Carter argues there was no enforceable settlement agreement because there was no meeting of the minds. We disagree. The material terms of the agreement were clear and specific, were placed on the record, and Carter unequivocally gave his personal assent thereto. During the same settlement proceedings, the settling defendants through their insurance carrier's authorized representative, Farrell, likewise expressed agreement to the settlement terms, as was found by the trial court in granting the motion to enforce settlement. On this record, we conclude the purported lack of a meeting of the minds has not been established by Carter.

Third, Carter argues the trial court erred by considering the declarations filed in connection with the settling defendants' reply to their motion to enforce settlement. Among other things, the subject reply declarations of Farrell and Nicholson set forth facts indicating their authorization to settle, along with a description of the oral settlement discussions in which Farrell participated telephonically. At the oral argument on the motion, the trial court initially indicated the reply declarations were not considered. Nevertheless, Carter proceeded to explain to the trial court, during oral argument, that the declarations "talk about that they have full authority" but such authority, Carter argued, could not exist and was contrary to section 664.6 principles. These were the same

29.

arguments that have been raised on appeal and have been rejected. In the present appeal, Carter states that he disagrees with the description provided by Farrell's declaration regarding an aspect of her telephonic appearance; namely, Carter states he did not personally take part in any direct conversation with Farrell. We fail to see how, even if that purported discrepancy had been brought to the trial court's attention, it would have made any difference. Even assuming the trial court did consider the reply declarations, and even assuming doing so constituted procedural error, we conclude that Carter has failed to demonstrate any prejudice resulted. A reviewing court may not set aside a judgment due to a trial court's error unless it finds the error was prejudicial. (*F.P. v. Monier*, *supra*, 3 Cal.5th at p. 1108.) It was Carter's burden, as appellant, to not only show error, but to establish that the error was likely to have affected the outcome. (*Yield Dynamics, Inc. v. TEA Systems Corp*. (2007) 154 Cal.App.4th 547, 557.) Carter has failed to meet this burden; that is, even if error may have occurred, no prejudice has been shown.

## DISPOSITION

The orders of the trial court are affirmed. The settling defendants (i.e., respondents) are entitled to their costs on appeal.

LEVY, Acting P. J.

WE CONCUR:


POOCHIGIAN, J.


MEEHAN, J.

30.